[Sac. No. 1360. In Bank.—August 10, 1905.]

M. COFFEY, Petitioner, v. SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[147 525<br>f147 569]

PROHIBITION—JURISDICTION—ACCUSATION AGAINST CHIEF OF POLICE—MISCONDUCT—CORRUPT FAILURE TO SUPPRESS GAMBLING.—The superior court has jurisdiction of an accusation presented by the grand jury against the chief of police of a city, under section 758

of the Penal Code, charging him with willfully, unlawfully, corruptly, and intentionally failing, refusing, and neglecting to inform against and prosecute illicit gaming and gambling, with knowledge of the facts; and prohibition will not lie to prevent the trial of such accusation.

ID.—CONSTRUCTION OF PENAL CODE—PRIVATE ACCUSATION—DEFINITION OF "MISCONDUCT."—It is immaterial what refusal and neglect of an officer to perform his official duties are covered by the provisions of section 772 of the Penal Code for private accusation, where the facts alleged show "willful misconduct" within the meaning of section 758 of that code. The phrase "misconduct" is broad enough to include any wilful malfeasance, misfeasance, or nonfeasance in office.

ID.—MISDEMEANOR OF POLICE OFFICER—"WILLFUL MISCONDUCT."—All police officers refusing and neglecting to inform against and diligently prosecute persons whom they have reasonable cause to believe are offenders against the acts prohibiting gaming and gambling are guilty of a misdemeanor under section 335 of the Penal Code; and an accusation showing facts constituting such misdemeanor by a chief of police sufficiently charges him with "wilful misconduct" in office.

ID.—MUNICIPAL OFFICERS — CONCURRENT JURISDICTION OF SUPERIOR COURT—ADMINISTRATIVE JURISDICTION UNDER FREEHOLDERS' CHARTER NOT EXCLUSIVE.—The provision in a freeholders' charter for removal of municipal officers by administrative proceedings instituted by the mayor before the municipal board is not exclusive in its nature, and does not supplant the concurrent jurisdiction given to the superior court to try an accusation against a municipal officer presented by the grand jury under section 758 of the Penal Code.

ID.—"MUNICIPAL AFFAIR."—Conceding that the removal of officers under the freeholders' charter is a "municipal affair" within the meaning of section 6 of article XI of the constitution, that cannot affect the concurrent jurisdiction of the superior court conferred upon it by general law applicable to municipal officers in all municipal corporations, however constituted.

APPLICATION for Writ of Prohibition to the Superior Court of Sacramento County. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

Devlin & Devlin, and James B. Devine, for Petitioner.

A. M. Seymour, for Respondents.

LORIGAN, J.—On August 24, 1904, the grand jury of the county of Sacramento presented and filed in the superior

court of that county an accusation against M. Coffey, chief of police of the city of Sacramento, the petitioner herein.

The accusation, after alleging the official character of the petitioner, that the city of Sacramento is a municipal corporation governed by a freeholders' charter, and that petitioner at all the times mentioned therein was the duly appointed, qualified, and acting chief of police of the city of Sacramento, charges that on the twenty-second, twenty-third, and twenty-fourth days of August, 1904, certain prohibited and illicit gaming, consisting of faro, roulette, klondyke, and other illegal banking and percentage games, was conducted in the city of Sacramento, specifying the several places in said city in which said illegal gaming was being conducted; that on all of said dates the said chief of police had knowledge of the fact that said illicit gambling was so being conducted in said places in an open, notorious, public, and flagrant manner; and that notwithstanding he had knowledge of this fact, said M. Coffey, as chief of police of said city, "willfully, unlawfully, corruptly and intentionally failed, refused and neglected, and does now willfully, unlawfully, corruptly and intentionally fail, refuse and neglect, to inform against and diligently, or otherwise, prosecute the persons who he knew and who he had cause to believe were so dealing, playing, carrying on, opening, causing to be opened, and conducted the said illegal games; and the said M. Coffey also failed, refused and neglected to prosecute said persons and to suppress said illegal games." It is further charged in the accusation that persons owning the buildings in which said illegal games were being carried on rented said houses and premises for the purpose of permitting such illegal games to be conducted, and that said chief of police had knowledge of that fact, but, notwithstanding such knowledge, he willfully, unlawfully, corruptly, and intentionally refused, failed, and neglected to inform against or diligently or otherwise prosecute the said persons who are alleged to be the owners or renters of the buildings so used.

It prays that said M. Coffey be cited to appear and upon the due hearing of said accusation that he be removed from his office as chief of police of the city of Sacramento.

The petitioner in due course appeared and objected by demurrer to the legal sufficiency of the accusation and the

jurisdiction of the superior court to try it, and asked that it be dismissed. The demurrer was overruled and the petitioner pleaded not guilty. The superior court, being about to proceed with the trial of the accusation, upon the application of the petitioner an alternative writ of prohibition was issued out of this court directing the respondents to show cause why they should not refrain from further proceedings under the accusation.

The matter is now before us upon a demurrer to the petition for the writ of prohibition.

In order to clearly understand one of the points made by petitioner under his application for this writ, it is necessary to refer to certain sections of the Penal Code, found in the chapter thereof providing for the removal of civil officers otherwise than by impeachment.

Section 758 of that code provides that "An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed." Subsequent sections prescribe the procedure upon the trial of the accused, and, if convicted, declare that the court shall pronounce judgment removing him from office.

Section 772, following, provides for summary proceedings for the removal of public officers: "When an accusation in writing, verified by the oath of any person, is presented to a superior court, alleging that any officer within the jurisdiction of the court . . . has refused or neglected to perform the official duties pertaining to his office. . . ."

It will be observed from a comparison of these sections that the section first referred to provides for the initiation of proceedings for the removal of a public officer by the grand jury, "for willful or corrupt misconduct in office" on the part of such officer; the latter section for the initiation of proceedings having in view the same end, by a private individual, when the public officer "has refused or neglected" to perform official duties.

This difference in the terms of the section affords the basis for the claim of petitioner that the accusation in question does not charge him with "willful or corrupt misconduct in office," but simply with neglect or refusal to perform the

duties pertaining to his office, and that hence the superior court has no jurisdiction to proceed with the trial, as the proceeding should have been instituted by a private individual under section 772 of the Penal Code, instead of section 758 thereof; that the grand jury could only accuse petitioner of "willful or corrupt misconduct in office" under section 758, and that the facts alleged in the accusation do not support such a charge.

We cannot agree with petitioner's view of the effect of the charges made, or with his view of the application of the code sections to them.

It is of no consequence in the consideration of the question here involved to determine for what derelictions of duty proceedings under section 772 must be had; whether that section applies only to those cases where the official dereliction is the result simply of incompetency in the officer or springs from carelessness or inattention to his official duties. The question here is, Do the charges embraced in the accusation show "willful misconduct" under section 758? This latter section provides for two classes of misconduct for which a public officer may be removed under accusation by the grand jury—willful misconduct or corrupt misconduct. The phrase "misconduct in office" is broad enough to include any willful malfeasance, misfeasance, or nonfeasance in office. (*State* v. *Slover*, 113 Mo. 208, [20 S. W. 788].)

In Mechem on Public Officers (sec. 457) it is stated that "misconduct in office does not necessarily imply corruption or criminal intention. The official doing of a wrongful act, or official neglect to do an act which ought to have been done, will constitute the offense, although there was no corrupt or malicious motive."

After defining "misconduct," Webster declares it to be synonymous with "misbehavior," "misdemeanor," "delinquency," and "offense."

In the chapter on gambling in the Penal Code which prohibits and makes penal the conducting of such games as are charged to have been conducted in the city of Sacramento with the knowledge of petitioner, it is provided by section 335 of that code that "Every . . . police officer must inform against and diligently prosecute persons whom they have reasonable cause to believe offenders against the provisions of

CXLVII. Cal.—34

this chapter, and every such officer refusing or neglecting to do so is guilty of a misdemeanor.''

The accusation in question here charges that the unlawful gaming specified was being conducted in the city of Sacramento; that the petitioner knew of it, and refused and failed to prosecute the offenders. This failure and refusal to do so, if true, was under the circumstances a misdemeanor on the part of petitioner,—a crime of which in his official capacity he was guilty, and which of itself constituted a willful misconduct in office. It was not a mere neglect of duty. It was a failure to discharge his duty with knowledge of the facts calling for official action; a failure which was willful, and which evidenced a fixed purpose not to do what actual knowledge and the requirements of the law declare he shall do.

Taking, then, into consideration the general definition as to what constitutes misconduct in office, coupled with the section of the statute making it a misdemeanor for a police officer to refuse or neglect to inform against or prosecute for such illicit gambling, of the existence of which it is charged the petitioner had knowledge, we entertain no doubt that the accusation sufficiently charged willful misconduct in office on the part of petitioner of such a character as it is contemplated by the provisions of section 758 of the Penal Code the grand jury may accuse him of before the superior court, and that the objection of the petitioner, that the charges in the accusation did not bring him within the terms of that section so as to authorize initiation of a prosecution against him by the grand jury is untenable.

It is insisted, however, by the petitioner that the superior court has no jurisdiction to try him. In that regard it is contended that by the freeholders' charter of the city of Sacramento the board of trustees of the said city is constituted a tribunal for the trial of city officers charged with misconduct in office or neglect of duty, and that this jurisdiction is exclusive; that the provisions of the Penal Code were superseded by the charter provisions under section 8 of article XI of the constitution, as being laws inconsistent with such charter.

We perceive no merit in this claim. It is true that the charter of the city of Sacramento deals with the matter of removal of city officers. Under its provisions the mayor shall

report any dereliction, neglect, or non-performance of duty of an officer to the board of trustees, who may proceed to try him under the accusation, and remove him from office if they find the charges true. A trustee may be removed only for malfeasance in office. As to the mayor himself there is no provision for his trial or removal should he be guilty of misconduct. The provisions of the charter seem to apply only to some officers, and the scheme for the removal of delinquent officials is to that extent incomplete. It is further generally provided that any official defalcation, willful neglect of duty, or official misconduct of an officer which the mayor may discover or which is reported to him shall be laid by him before the board of trustees, city attorney, or district attorney, "in order that the public interests may be protected and the person in default be proceeded against according to law."

There is nowhere in the charter any provision which in terms confers exclusive jurisdiction upon the board of trustees to proceed against and remove municipal officers, nor is there apparent in any of the charter provisions an intention that its provisions should supersede the provisions of the general law as found in the sections of the Penal Code relative to the removal of delinquent officials from office.

In fact, taking into consideration that provision of the charter itself which requires the mayor to report official delinquencies to the board of trustees, or the city attorney, or the district attorney, in order that the public interests may be protected and the delinquent official proceeded against according to law, it is apparent that no exclusive jurisdiction was intended to be conferred on the board of trustees, but only a jurisdiction which, as far as the charter provided causes for removal and proceedings to remove, should be concurrent with the jurisdiction of the superior court under the general law. By directing that a report of the dereliction of city officials might be made to the "district attorney" in order that proceedings against them might be taken by him "according to law," it is obvious that no exclusive jurisdiction in the board of trustees was intended to be conferred. The district attorney having no official connection at all with the municipality could proceed only under the general law by directing the grand jury's attention to the matter of official delinquencies which was called to his attention by

the mayor, and having an accusation presented by the grand jury under section 758 of the Penal Code such as was presented here, or inaugurating a proceeding under section 772 of the same code at the instance of a private individual.

We have called attention to these matters simply to show that upon the face of the charter there is nothing found which either in terms or by implication confers exclusive jurisdiction upon the board of trustees to remove municipal officers. Neither do we perceive, as contended, any inconsistency between the power to remove delinquent officials conferred on the trustees under the charter and the jurisdiction conferred upon the superior court under the provisions of section 758 and the following sections. The power or jurisdiction conferred in either case is directed to the same subject-matter—a derelict municipal officer; and the remedy in either case is the same—his removal from office. Under either the general law or under the charter the same evil is dealt with and the same remedy provided. The method of procedure is, it is true, different, but this does not affect the matter of consistency, and proceeds from the difference in the nature of the jurisdiction exercised by the superior court and by the board of trustees under the charter. The one is judicial, the other political or administrative, or at best quasi-judicial. The power conferred under the charter is, strictly speaking, the power of expulsion or amotion of its municipal officers lodged in its executive and legislative branches, and exercised in the discharge of an administrative duty.

This power of expulsion, amotion, or quasi-impeachment of delinquent municipal officers has generally been considered both at common law and in this country as an incident to corporate existence, and is exercised by the municipality as an administrative duty—springing from its political existence and as vital thereto—to remove incompetent, unfaithful, and unworthy officers, in the interest of good order and government. It is, strictly speaking, this administrative power which is conferred upon the trustees of the city of Sacramento under the charter and the proceedings against officials provided for therein are administrative rather than judicial.

The proceedings under the Penal Code are essentially judicial, and the jurisdiction to entertain an accusation of the grand jury against a municipal officer for corrupt or willful

misconduct in office is conferred upon the superior court by the legislature under a constitutional provision directly authorizing the legislature to so confer it. Article IV (sec. 18) of the constitution provides for the impeachment of certain state officers for misdemeanor in office, and then further provides that "all other civil officers shall be tried for misdemeanor in office in such manner as the legislature may provide."

Official misconduct at common law was an indictable offense, and the result of conviction removal from office. (Bracton's Abridgment, title "Office and Officer.") The charge against the petitioner constitutes both at common law and under the provisions of the Penal Code a public offense, —a misdemeanor in office,—and the proceedings under which he is prosecuted are of a criminal nature. Aside from section 335 of the Penal Code, to which we have heretofore referred, which makes it a crime for a police officer to refuse or neglect to proceed against and prosecute violations of the general law against gambling, it is further provided by section 15 of the same code that "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed upon conviction either of the following punishments: . . . Fourth., Removal from office."

The provisions of the Penal Code constitute a general law applicable to all municipal corporations, whether created by freeholder charter, existing under special charter granted prior to the adoption of the present constitution, or organized under the General Municipal Act. The judicial proceedings which are there provided for may be inaugurated by the grand jury or by a private individual. Under the charter the proceeding can be inaugurated only by the mayor. In the one instance a more general right is conferred to proceed towards the removal of such officers than in the other. Authorizing proceedings under the general law to remove municipal officers is not inconsistent with the charter provisions also empowering the board of trustees to do the same thing. There are simply provided several tribunals in which to administer the same remedy, and the remedies are cumulative. The subject-matter over which jurisdiction is conferred is common to both—official delinquency; and the same remedy is to be applied by each—removal from office. It is not at all

unusual for different tribunals to have concurrent jurisdiction over the same subject-matter, the same parties, and to be empowered to grant the same relief, and, in our judgment, that is the condition here. The jurisdiction conferred upon the board of trustees is not exclusive, but concurrent with that of the superior court under the provisions of the general law. And the granting of this power to remove delinquent officers by the charter is not at all inconsistent with the existence of concurrent jurisdiction in the superior court over the same subject-matter. Nor did the charter provision in that respect supersede the general law as inconsistent with the charter under section 8 of article XI of the constitution.

It is insisted by counsel for petitioner that his position in this matter is supported by the ruling of this court in *Croly v. Board of Trustees of Sacramento,* 119 Cal. 229, [51 Pac. 323]. That was a proceeding in prohibition in which Croly, then the superintendent of streets of the city of Sacramento, sought to prohibit the board of trustees under the charter from trying him on certain charges of misconduct, on the ground that jurisdiction to remove him was exclusively vested in the superior court, to be inaugurated by a proceeding under section 758 et seq.—the general law we have been considering. This court sustained the power of the board of trustees to try him. Counsel construes the language in the opinion in that case as holding, in effect, that jurisdiction was vested in the board under the charter to do so. We do not so understand the decision. The main question there was not whether the superior court had exclusive jurisdiction to try him, but whether the board of trustees had any jurisdiction to do so. The contention of counsel for Croly in that case was, that the provision of the charter was unconstitutional, as an attempt to confer judicial power upon the board of trustees. It was held that vesting the board of trustees with power to try and remove municipal officers was rather the exercise of a power necessary to secure good governmental administration, a political and administrative power, and the right of the board of trustees to try him was sustained on that ground. It was not decided that the jurisdiction of the board was exclusive, or that jurisdiction in the superior court concurrent with that vested in the board did not exist. It is said in the decision, and the power was sustained on that

ground, that "It is clear that the right of amotion is but the exercise of a police power necessary to the welfare of a city." We cannot perceive anything in the decision of the Croly case which sustains petitioner's contention.

It is finally insisted that the removal of municipal officers is purely a "municipal affair," and that as to such matters the charter provision, under section 6 of article XI of the constitution, cannot "be subject to and controlled by general laws." Whether the removal of petitioner is or is not a "municipal affair" has been very largely discussed by counsel upon both sides, but we do not perceive that the solution of that question is germane to the case. The general law which confers jurisdiction on the superior court to entertain proceedings for the removal of municipal officers does not thereby render the charter provision conferring similar jurisdiction on the board of trustees "subject to and controlled by" the general law. To be "subject to" is "to become subservient to" or "subordinate to," and to control is defined as "to exercise a directing, restraining, or governing influence over; to direct, to counteract, to regulate." (Century Dictionary.)

The general law does not have this effect. That law, conceding that the removal of municipal officers is purely a "municipal affair," does not assume to subordinate or make subservient the jurisdiction conferred on the trustees by the charter to remove delinquent officers, or to control, govern, direct, or regulate it. The jurisdiction under the charter is exercised untrammeled, unrestrained, and uncontrolled by the fact that jurisdiction on the subject is also conferred on the superior court under the general law. The jurisdiction of both is consistent and concurrent.

The demurrer to the petition is sustained.

Shaw, J., Van Dyke, J., McFarland, J., Angellotti, J., Henshaw, J., and Beatty, C. J., concurred.

Rehearing denied.