[S. F. No. 7589. In Bank.—March 18, 1916.]

L. SCHEAFER et al., Petitioners, v. JOHN HERMAN et al., as the Board of Election Commissioners of the City and County of San Francisco, Respondents.

MUNICIPAL CORPORATION—RECALL OF OFFICER—MUNICIPAL AFFAIR.—The subject of the removal of officers of a city and county, by means of a recall, when provided for in a special charter, is a municipal affair, within the meaning of that phrase as used in section 6, article XI, of the constitution, and, consequently, it is not subject to or controlled, as regards the mode of removal provided therein, by general laws inconsistent therewith.

ID.—SAN FRANCISCO—CHARTER SCHEME FOR RECALL IS COMPLETE—DATE OF SIGNATURE TO PETITION NOT REQUIRED.—The freeholders' charter of the city and county of San Francisco contains a complete scheme for the recall of municipal officers, (Stats. 1911, art. XI, chap. V, p. 1661) and does not require the voter, in signing a petition for recall, to add to his signature the date upon which he writes it.

ID.—SECTION 1083A OF POLITICAL CODE NOT PART OF CHARTER.—Section 1083a of the Political Code, as amended in 1915, requiring the signer of a recall petition to affix thereto the date of such signing, did not become, by adoption, a part of such charter, under the provisions of section 7 of chapter V of article XI, and of section 5 of chapter I of article XI of the charter.

ID.—INCONSISTENCY BETWEEN GENERAL LAW AND CHARTER.—The provisions of the general law requiring the voter to add the date of his signature to a recall petition are inconsistent with the provisions of the charter allowing him to make a petition without such date, and consequently such provisions of the general law do not apply to or affect proceedings for recall under the charter.

ID.—TIME FOR ELECTION COMMISSIONERS TO ACT ON PETITION.—The refusal of the board of election commissioners to examine the petition, within the time prescribed by the charter, to ascertain whether or not it is signed by the requisite number of electors entitled to vote, does not destroy the rights of the signers, nor terminate the proceeding.

Id.—Directory Provision.—The provision of section 3, chapter V, article XI, of the San Francisco charter requiring the election board to examine a recall petition and, if found sufficient, to make an order within ten days after the petition is filed, calling an election thereon, is directory only. Such order may be made after ten days if good cause exists for the delay.

APPLICATION for a Writ of Mandate directed to the Board of Election Commissioners of the City and County of San Francisco.

The facts are stated in the opinion of the court.

. Daniel O'Connell, for Petitioners.

Thomas V. Cator, John S. Partridge, and Thomas E. Haven, for Respondents.

SHAW, J.—This is an original proceeding in this court against the board of election commissioners of the city and county of San Francisco, in *mandamus,* to compel the board to perform its duties with respect to a certain recall petition alleged to have been presented to the board for its action.

On September 27, 1915, the petitioners duly presented to and filed with the said board a petition for the recall of Percy V. Long as city attorney of said city and county. There were appended to the petition the names of 10,395 persons, said number being more than ten per cent of the total vote cast for mayor of the city and county of San Francisco at the then last preceding municipal election. Added to each signature was the place of residence, with street and number, of the person signing. The petition was duly verified by the persons who circulated the same. Thereupon the petitioners demanded of the board that it proceed to examine the signatures and determine whether or not it was signed by the requisite number of electors, and, if they found it sufficient in that respect, that they proceed to order and fix a date for holding the proposed recall election. The commissioners refused to do so, basing their refusal upon the ground that the persons signing the petition had not added to their signatures, respectively, the date on which they signed the petition. Upon the hearing it was conceded that the petition appeared to be signed by a sufficient number of persons to require the

calling of an election, under the provisions of the charter of San Francisco, if the persons so signing were qualified to sign such petition. The sole question involved appears to be whether or not it was necessary for each person signing such petitions to state, in addition to his residence, street, and number, the date of such signing.

It is conceded that the subject of the removal of officers of a city and county, by means of a recall, when provided for in a special charter, is a municipal affair, within the meaning of that phrase as used in section 6, article XI of the constitution, and that, consequently, it is not subject to or controlled by general laws inconsistent therewith. This is in accordance with our decisions. (*Croly* v. *Board of Trustees of Sacramento*, 119 Cal. 229, 233, [51 Pac. 323]; *Coffey* v. *Superior Court*, 147 Cal. 525, 535, [82 Pac. 75]; *Dinan* v. *Superior Court*, 6 Cal. App. 217, 222, [91 Pac. 806].) This does not mean that the general laws prescribing procedure and causes for removal do not apply to such municipal officers. The rule is that where a freeholder's charter has provided a mode of removal of officers and that mode is resorted to, the general law cannot control the exercise of the power in that manner, or change the procedure required by the charter. (*Coffey* v. *Superior Court*, 147 Cal. 525, [82 Pac. 75].)

The charter of San Francisco contains a complete scheme for the recall of municipal officers. (Stats. 1911, art. XI, chap. V, p. 1661.) Section 1 of this chapter provides that "The holder of any elective office may be removed or recalled by the electors. The procedure to effect such removal or recall shall be as follows: A petition demanding the election of a successor to the person sought to be removed or recalled shall be filed with the Board of Election Commissioners. Such petition shall be signed by registered voters equal in number to at least ten per cent of the entire vote cast for Mayor at the last preceding general municipal election." Section 2 provides that the petition shall be in all respects the same, and shall be examined and certified in the same manner, as provided in petitions for the initiative, under sections 2 and 3 of chapter III, article XI, of the charter. These relate to initiative proceedings. Section 2 of chapter III defines the term "registered voters," provides for the circulation of separate copies of a petition for initiative measures for signatures, and the verification thereof by the person cir-

culating the same, and adds the following: "Each signer of said petition shall add to his signature his place of residence, giving the street and number. Unless and until it be proven otherwise by official investigation, it shall be presumed that the petition filed conforms to all legal requirements and contains the signatures of the requisite number of registered voters, and, after an election based thereon, the sufficiency of said petition shall not be questioned." Section 3 of chapter V, relating to the recall, requires the board, within ten days after the filing of the petition, unless it is found insufficient, to order and fix a date for holding a recall election.

It is clear that these provisions do not require the voter to add to his signature the date upon which he writes it. It requires only that he add his place of residence, giving the street and number thereof. The respondents claim that the date is required by reason of the provisions of section 1083a of the Political Code, as amended in 1915, [Stats. 1915, p. 286], which took effect August 8, 1915. This section constitutes a part of the general election law of the state and relates particularly to initiative, referendum, and recall elections and to petitions required to be signed by qualified electors. The clause upon which the respondents rely refers to the mode of signing such petitions and provides that "Such signer shall at the time of so signing such petition or paper affix thereto the date of such signing." It is claimed that this becomes a part of the charter by adoption. This claim is based upon section 7 of chapter V of article XI of the charter.

Chapter V relates to the recall. Sections 1 to 6 prescribe the form of petition, the number of signatures required, the call for the election thereon, the nomination of candidates, the circulation of sample ballots, and other matters, all of which precede the recall election. The first clause of section 7 is as follows: "Until and unless there be some other method provided in this chapter for the conduct of a recall election, such election shall be governed, so far as applicable, by the laws governing the holding of other municipal elections, except as hereinafter provided." The matters thereinafter provided consist of directions regarding the form of the ballot, the number of votes necessary to recall the incumbent and to elect a successor. Nothing is provided with respect to signatures to the recall petition.

The thing referred to in the clause of section 7 above quoted, and which is to be governed by "the laws governing the holding of other municipal elections," is the matter of "the conduct of a recall election." Chapter II of the article is entitled "Municipal Elections." [Stats. 1899, p. 345.] It provides for the time of holding primary and general elections, the mode of nominating candidates, the election proclamation, the form of ballots, and other things preliminary to the holding of elections, but it contains nothing about the conduct of elections. With respect to the conduct of elections the only provision in the charter is section 5, chapter I, article XI, which declares that "all provisions of the general laws of this state, including penal laws, respecting elections, not inconsistent with the provisions of Chapter II hereof, shall be applicable to all elections held in the city and county of San Francisco." The argument is that this language imports into section 7 of chapter V, article XI of the charter, which relates to recall elections, all the provisions of section 1083a of the Political Code, respecting the signatures to recall petitions.

It cannot be so construed. Section 7 does not refer to the general laws for the purpose of ascertaining the law relating to recall petitions. The reference is only for the purpose of ascertaining the law governing the manner of conducting recall elections. Section 7 does not purport to provide anything whatever regarding the signatures to the recall petitions. That subject is controlled entirely by section 2 of the same chapter and by section 2, chapter III, which, by reference, is made a part of section 2 of chapter V, neither of which refers to the general law. They purport to be complete in themselves and do not require aid from any other statute to make them cover the subject for which they were intended to provide. The reference in section 7 to the general law, as providing for the conduct of recall elections, is confined to that subject and cannot be extended to the subject of the mode of signing recall petitions to initiate a recall proceeding under the charter.

It is further argued that section 1083a applies under another rule of interpretation, namely, that the general law prevails in all cases where it is not inconsistent with the provisions of the charter. It is argued that there is nothing in the charter on the subject of dating the signatures to a recall

petition; that, therefore, the provisions of section 1083a, requiring the date of signing to be inserted, is not inconsistent with the charter, but is an independent, supplemental provision, which the legislature had the power to enact and to make applicable to municipal affairs in all municipalities wherein there were no charter provisions inconsistent therewith. This argument is untenable. There is an inconsistency. The charter, as we have said, contains a complete scheme for the making and filing of petitions for the recall of municipal officers. Article XI of the charter was adopted prior to any recall legislation by the state. It gave the voters of San Francisco the right and power to initiate proceedings to recall municipal officers by complying with its provisions. Among these provisions was one that the petition for the recall should be signed by registered voters of the city and county and that each signer ''shall add to his signature his place of residence, giving the street and number.'' This was all that was necessary. He was not required to add thereto the date of signing the petition, or any other matter whatever. Those who circulated the petition were not required or allowed to exact anything more. Any addition to the things required to effect a recall would be an additional burden upon the right, and would be inconsistent with the charter which gave the right without compliance with further conditions. The provisions of the general law requiring him to add the date of his signature being, therefore, inconsistent with the provisions of the charter which allowed him to make a recall petition without such date, it follows that it does not apply to or affect proceedings for recall under the charter.

Arguments are also presented with respect to the inconveniences attending the lack of a date to the signature, as that the election board, when they examine the petition, must determine whether or not each petitioner was a qualified registered voter on the date of signing the petition and must therefore ascertain such date. No doubt this might be a convenient aid to the board in making its examination in cases of dispute and where fraud was charged. But matters of inconvenience do not affect the argument that recall proceedings are to be controlled by reference to the provisions of the charter, and not with regard to other provisions that might be more convenient or might tend to prevent fraud. The law provides a way to amend the charter. If amend-

ment is desired, this way must be followed. It cannot be done by the short cut of interpretation contrary to the sense of the language used.

Our conclusion is that the failure of the persons signing the recall petition to add to their signatures the date on which they signed it does not affect the validity of the petition, nor excuse the board of election commissioners from the duty of examining such petition to ascertain and determine whether or not it is signed by the requisite number of electors entitled to vote, as provided in section 3, chapter III, article XI of the charter. It is not disputed that the lapse of ten days is not material to the right of the petitioners. That provision is directory only. The refusal of the board to act within the time prescribed does not destroy the rights of the persons signing the petition, nor terminate the proceeding. It is the duty of the board to proceed now to examine the petition in the same manner as if they had begun the examination within the ten days provided by the charter.

Let a writ of mandate issue directed to the board of election commissioners of the city and county of San Francisco, commanding it to proceed forthwith finally to determine from the records of registration whether or not the said petition for the recall of Percy V. Long as city attorney of the said city and county is signed by the requisite number of electors entitled to vote and that, if it finds it sufficient and otherwise lawful, that it thereupon proceed to order and fix a date for holding the election upon said recall petition.

Sloss, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.

MELVIN, J., Dissenting.—I dissent. The duty of the election board is to examine the petition and to determine whether or not each petitioner was qualified as a registered voter at the time he affixed his signature. How can such a duty be performed unless the date of signature be established? The opportunities for fraud in the inauguration of a recall are so numerous that every precaution should be taken to guard against improper practices. It may be that the law does not *in terms* command the dating of the signatures. It does, however, require the election commissioners solemnly to certify to the status of each signer as a registered voter at the moment when he affixed his name to the petition. They can-

not possibly perform that duty without evidence upon this subject, and surely the law does not contemplate the calling of all of the signers as witnesses before the board. Therefore, it seems to me, there is a clear implication that the date of signing must be indicated by each of the petitioners or by the person who circulates and verifies the petition.