TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1006 |
| of | : | |
| | : | February 25, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RUBEN S. AYALA, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following questions:

1.    Is a county sheriff authorized to investigate criminal acts alleged to have occurred at a state correctional facility?

2.    Under what circumstances, if any, may a county sheriff decline to investigate criminal acts alleged to have occurred at a state correctional facility?

CONCLUSIONS

1.    A county sheriff is authorized to investigate criminal acts alleged to have occurred at a state correctional facility.

2.    A county sheriff may decline to investigate criminal acts alleged to have occurred at a state correctional facility when, for example, the crime report is patently frivolous, a preliminary investigation shows the allegations to be without merit, or he has an agreement that another law enforcement agency having jurisdiction over the matter will carry out the appropriate investigation.

ANALYSIS

1.    Investigative Authority of the Sheriff

The first question to be resolved is whether a county sheriff has the authority to investigate crimes allegedly committed at a state prison. We conclude that a sheriff has such authority.

The office of sheriff is established by the Constitution (Cal. Const., art. XI, § 1, subd. (b)) and by statute (Gov. Code, § 24000). However, as we observed in 56 Ops.Cal.Atty.Gen. 390, 390 (1973):

"The office of sheriff has ancient early feudal roots. A sheriff was both the chief executive officer and the conservator of the peace in his county or shire. His duties were often accomplished through agent deputies acting in his name. These early common law concepts were a part of early California common and statutory law and to a large part continue to the present."

We have characterized a sheriff as having the position of chief law enforcement officer in the county. (50 Ops.Cal.Atty.Gen. 64, 67 (1967).) The jurisdiction of a sheriff to investigate crimes extends throughout the county, including incorporated cities. (8 Ops.Cal.Atty.Gen. 149, 150-151 (1946).) The fact that a sheriff has concurrent jurisdiction with a city police chief within the boundaries of a city does not diminish the authority of the sheriff. (*People* v. *Scott* (1968) 259 Cal.App.2d 268, 280; 8 Ops.Cal.Atty.Gen., *supra*, 150.)

The authority of a sheriff extends to state-owned property. **Footnote No. 1** State facilities are subject to the same laws as the surrounding territory, and those laws may be implemented and enforced by the sheriff, who is an officer of the county, which is in turn a political subdivision of the state. (Cal. Const., art. XI, § 1.) In 50 Ops.Cal.Atty.Gen. 64, *supra*, we considered the authority of a sheriff to make arrests and investigate offenses within a state park administered by the California Department of Parks and Recreation. We concluded that the jurisdiction of the sheriff was concurrent with that of state park peace officers and that the powers given to the latter officers were not in derogation of the authority of the sheriff. (*Id*., at p. 69; see also 36 Ops.Cal.Atty.Gen. 198, 200 (1960).)

We reach the same conclusion with respect to the authority of a sheriff to investigate crimes committed on the grounds of state correctional facilities. While state correctional officers may have concurrent powers to make arrests and investigate such crimes (see Pen. Code, §§ 830.2, subd. (d); 830.5. subds. (a) and (b)), that fact does not deprive the sheriff of his authority to make an investigation. Moreover, although the sheriff is not required to obtain the consent of the Department of Corrections in order to investigate a crime at a correctional facility, the Director of Corrections has formalized the practice of referring criminal investigations to local law enforcement officers, notwithstanding the director's authority to manage and control correctional facilities. (Pen. Code, § 5054.) With certain exceptions not relevant here, the director's administrative practice is to have criminal investigations conducted by a local law enforcement agency under the following administrative regulation:

". . . all criminal misconduct by persons under the jurisdiction of the department [of corrections] or occurring on [correctional] facility property shall be referred by the institution head or designee to appropriate authorities for possible investigation and prosecution . . . ." (Cal. Code Regs, tit. 15, § 33167, subd. (a).)

We thus conclude that a sheriff has the authority to investigate criminal acts alleged to have occurred on the grounds of a state correctional facility.

2.      Declining To Investigate

The second question presented is whether a sheriff, assuming he has authority to investigate criminal acts alleged to have been committed at a state prison, may decline to investigate the allegations. We conclude that a sheriff has the discretionary authority to decline to investigate alleged criminal activities in specified circumstances.

A sheriff has a general duty to investigate crimes in his jurisdiction and arrest those who have committed public offenses. (See *Coffee* v. *Superior Court* (1905) 147 Cal. 525, 530; *Los Angeles Free Press, Inc.* v. *City of Los Angeles* (1970) 9 Cal.App.3d 448, 457; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653; 657; 50 Ops.Cal.Atty.Gen., *supra*, 67-68; 36 Ops.Cal.Atty.Gen., *supra*, 200; 8 Ops.Cal.Atty.Gen., *supra*, 151.) "The sheriff shall preserve peace . . . ." (Gov. Code, § 26600.) "The sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." (Gov. Code, § 26601.) "The sheriff shall prevent and suppress any affrays, breaches of the peace, riots, and insurrections which come to his knowledge, and investigate public offenses which have been committed." (Gov. Code, § 26602.)

Nevertheless, a sheriff may exercise some degree of discretion in investigating criminal activity. (See *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 793-797; *Gates* v. *Superior Court* (1995) 32 Cal.App.4th 481, 503, 506-507; *Newton* v. *County of Napa* (1990) 217 Cal.App.3d 1551, 1560; *Constance B.* v. *State of California* (1986) 178 Cal.App.3d 200, 208, fn. 8; *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 87; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 778; *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 8; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 875.) Accordingly, we do not believe that a sheriff must investigate patently frivolous charges. Also, a cursory, preliminary investigation may show the allegations to be without merit, resulting in no further investigation being necessary.

Significantly, a sheriff may not be the only law enforcement officer with jurisdiction to investigate a particular offense. (See Pen. Code, § 800.1, subd. (a)(1).) In similar circumstances to those present here, we concluded that "administrative understanding and comity, subject to the availability of appropriations" may control the extent and nature of the operations of law enforcement agencies with concurrent jurisdiction over an alleged criminal offense, such as between a sheriff and state park peace officers each having jurisdiction over a crime committed within a state park:

"State park peace officers are not clothed with all the powers of the sheriff, and they have authority to make arrests for and to investigate all public offenses within the confines of the State Park System. The sheriff has the power and duty to make arrests for and to investigate offenses within Folsom Lake State Recreation Area, a part of the State Park System, and his jurisdiction is concurrent with that of the state park peace officer. The extent and nature of the operations of either is a matter of administrative understanding and comity, subject to the availability of appropriations. There is no authority for the Director of Parks and Recreation to pay the county

for police services which the county already owes to all within its political confines, including a state park unit. The powers given to state park peace officers are not in derogation of the authority of the sheriff." (50 Ops.Cal.Atty.Gen., *supra*, 69.)

"Administrative understanding and comity" does not necessarily require a formal joint powers agreement or contract between agencies with concurrent jurisdiction in order to avoid a duplication of law enforcement efforts. On the other hand, a sheriff must be satisfied that serious criminal charges will be investigated by some law enforcement agency with jurisdiction to act. In *People* v. *Mullin* (1961) 197 Cal.App.2d 479, 487, the court ruled that when a sheriff ("appellant") received serious complaints of felony child abuse, he had the duty to investigate the matter or at least refer the matter to another government agency for appropriate investigation:

"Appellant had been notified through two different sources that a serious felony had been committed. As we have noted, appellant does not take the position that the acts did not occur; rather, he attempts to justify his actions upon the ground that he could not prove his case without the testimony of the girl. Nonetheless, appellant was under a duty to investigate the case after receiving the girl's complaint, and upon learning of a similar complaint made by the aunt to Deputy Lux. If appellant elected not to have his office make an investigation, his minimal duty was to notify the district attorney, or the juvenile authorities, or the grand jury, of the charges, the seriousness of which demanded that some agency of the county make a thorough investigation."

Other possible reasons may exist for declining to investigate a particular criminal complaint. Each situation would require evaluation based upon the specific facts. Of course, a sheriff may be found guilty of willful misconduct in office by failing to investigate a crime without sufficient cause. (*Coffee* v. *Superior Court*, *supra*, 147 Cal. at 530; *People* v. *Mullin*, *supra*, 197 Cal.App.2d at 487; see *Steiner* v. *Superior Court* (1996) 50 Cal.App.4th 1771, 1780.)

We conclude that a sheriff may decline to investigate criminal acts alleged to have occurred at a state correctional facility when, for example, the crime report is patently frivolous, a preliminary investigation shows the allegations to be without merit, or he has an agreement that another law enforcement agency having jurisdiction over the matter will carry out the appropriate investigation.

\* \* \* \* \*

**Footnote No. 1**
The authority of a sheriff to enforce criminal laws on Indian reservations and federally owned property is beyond the scope of this opinion. (See, e.g., 80 Ops.Cal.Atty.Gen. 46 (1997); 58 Ops.Cal.Atty.Gen. 384 (1975).)