TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

_____

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | No. 98-810 |
| | : | |
| of | : | May 28, 1999 |
| | : | |
| BILL LOCKYER | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE PHILLIP S. CRONIN, COUNTY COUNSEL, COUNTY OF FRESNO, has requested an opinion on the following questions:

1. May federal inmates and detainees be placed in custody in privately operated detention facilities in California?

2. May prisoners from other states be placed in custody in privately operated detention facilities in California?

3. Does a sheriff have the responsibility for responding to incidents or complaints at privately operated detention facilities housing federal inmates and detainees?

4. May a county contract with private operators of detention facilities housing federal inmates and detainees under terms requiring the operators to reimburse the county for the costs of the sheriff's response actions undertaken with respect to incidents or complaints at the facilities?

1

CONCLUSIONS

1.  Federal inmates and detainees may be placed in custody in privately operated detention facilities in California.

2.  Prisoners from other states may not be placed in custody in privately operated detention facilities in California.

3.  A sheriff has the responsibility for responding to incidents and complaints at privately operated detention facilities housing federal inmates and detainees, but may decline to respond under limited circumstances.

4.  A county may not contract with private operators of detention facilities housing federal inmates and detainees under terms requiring the operators to reimburse the county for the costs of the sheriff's response actions undertaken with respect to incidents or complaints at the facilities.

ANALYSIS

We are asked several questions concerning privately operated detention facilities[1] in California.  Under what circumstances, if any, may such facilities house federal inmates and detainees or prisoners sent here from other states?  If such facilities may be operated privately, what is the role of a sheriff in undertaking law enforcement actions at the facilities?

1.  Federal Inmates and Detainees

The first question to be addressed is whether federal inmates and detainees may be placed in custody in privately operated detention facilities in California.  We conclude that they may.

Under federal law, persons convicted of federal crimes are committed to the custody of the Bureau of Prisons ("Bureau").  (18 U.S.C. § 3621(a).)  In designating the place of incarceration, "[t]he Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, *whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted,* that the Bureau determines to be appropriate and suitable . . . ."  (18 U.S.C. § 3621(b); italics added.)  As used in the foregoing statute, the phrase "or otherwise" includes detention facilities operated by private entities.  (Gleave v. Graham (W.D.N.Y. 1997) 954 F.Supp. 599, 609-610.)

---

[1] The Term "detention facilities" is used broadly to include such commonly known places of incarceration as jails, prisons, and correctional facilities.  (See Pen. Code, § 6031.4.)

Other persons who may be placed in custody in a privately operated detention facility under federal law are aliens subject to a final order of removal issued by the Immigration and Naturalization Service ("INS"). Pending their removal, such persons may be detained by the INS. (8 U.S.C. § 1231(a)(2); 8 C.F.R. § 2.1.) Federal regulations governing the INS's detention of aliens require that the INS follow certain guidelines when contracting with non-INS facilities, including private ones. "Whenever an alien is taken into Service custody and detained at a facility other than at a Service Processing Center, *the public or private entities contracted to perform such service* shall have been approved for such use by the Service's Jail Inspection Program or shall be performing such service under contract in compliance with . . . ." (8 C.F.R. § 235.3(e); italics added. )

United States marshals may also place persons in custody in a privately operated detention facility. Such persons generally are those who have been arrested under federal law and are awaiting trial. (18 U.S.C. § 4086; see 28 C.F.R. § 0.111(k).) Federal law specifies:

> "The Attorney General, in support of United States prisoners in non-Federal institutions, is authorized to make payments from funds appropriated for the support of United States prisons for—
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "(3) the housing, care, and security of persons held in custody of a Untied States marshal pursuant to Federal law under agreements with State or local units of government or contracts with private entities . . . .
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

(18 U.S.C. § 4013(a).)

It further provides:

> "In order to be eligible for a contract for the housing, care, and security of persons held in custody of the United States Marshals pursuant to Federal law and funding under subsection (a)(3), a private entity shall—
>
> "(A) be located in a district that has been designated as needing additional Federal detention facilities pursuant to paragraph (1);
>
> "(B) meet the standards of the American Correctional Association;
>
> "(C) comply with all applicable State and local laws and regulations;
>
> "(D) have approved fire, security, escape, and riot plans; and
>
> "(E) comply with any other regulations that the Marshals Service deems

3

appropriate."  (18 U.S.C. § 4013(b)(2).)

Federal prisoners convicted in the District of Columbia may also be placed in custody in a privately operated facility in California.  The United States Attorney General has custody of these prisoners and is responsible for determining their place of confinement.  (D.C. Code, § 24-425.)  The United States Attorney General is authorized to designate "any available, suitable, and appropriate institutions, *whether maintained by the District of Columbia government, the federal government, or otherwise,* or whether within or without the District of Columbia."  (*Ibid*.; italics added.)  The United States Attorney General's authority and duties in this regard have been delegated to the Bureau.  Under the National Revitalization and Self-Government Improvement Act of 1997 (Pub.L.No. 105-33 (Aug. 5, 1997) 111 Stat. 712), the Bureau is required to house 2000 District of Columbia felons in privately operated facilities by December 31, 1999.

As found in *Gleave v. Graham, supra,* 954 F.Supp. at 608-609, the private operators of detention facilities housing federal inmates and detainees act pursuant to a subdelegation of executive authority from the federal government.  The rules, conditions of confinement, and penalties are imposed by a court or by statute or regulation, and the federal agency executing the contracts retains ultimate control over the private operators.  What the federal agency may do, private operators may do if their contracts with the federal agency are authorized by law.

Here, we find that the contracts are authorized by federal law.  Hence, the private operators need not look to California law as the source of their authority in carrying out the terms of their contracts.  In maintaining custody of the federal inmates and detainees, they act pursuant to federal law.

The supremacy clause of the United States Constitution provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."  (U.S. Const., art. VI, cl. 2.)

Federal laws are effective throughout the country, and the supremacy clause makes them a part of the law of each state.  (80 Ops.Cal.Atty.Gen. 297, 299 (1997); 66 Ops.Cal.Atty.Gen. 497, 499-500 (1983).)  California would thus be required to accept within its borders federal inmates and detainees housed in privately operated detention facilities pursuant to federal law.

We conclude in answer to the first question that federal inmates and detainees may be placed in custody in privately operated detention facilities in California.

4

98-810

2. Prisoners From Other States

The second question presented is whether prisoners from other states may be placed in custody in privately operated detention facilities located in California. We conclude that they may not.

The Legislature has enacted a comprehensive statutory scheme (Pen. Code, §§ 11189-11197)[2] governing the custody in California of prisoners from other states. California is a party to the Interstate Corrections Compact (§ 11189) and the Western Interstate Corrections Compact (§ 11190). Under both compacts, elaborate terms are provided for the contractual obligations of the parties and the procedural rights and duties governing the transfer of custody.

Significantly, this legislative scheme authorizes the State of California to contract for the placement of prisoners from other states. No authorization is provided in this legislation for another state to contract with a private entity to house its prisoners in California.

Moreover, when the Legislature has authorized the use of privately operated detention facilities, it has done so in specific and limited circumstances. (See, e.g., §§ 1208 [county jail prisoners in work furlough program], 3054 [female parolees in community residential treatment pilot program], 3413 [women inmates who have children in community residential treatment program], 6130 [inmates and parolees in health care facilities pilot program], 6225 [defendants sent to restitution centers in order to pay their victims financial restitution], 6256 [inmates in community correctional centers for alcohol and drug abuse], 6261 [inmates in work furlough programs].) No authorization has been given by the Legislature for a privately operated detention facility to house prisoners from other states.

In analyzing these various statutes, we apply well recognized principles of statutory construction. We are "to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) "[A] statute '. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' " (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1097.) " '[T]he expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . .' " (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) " 'In the grants [of powers] and in the regulation of the mode of exercise, there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode . . . .' " (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 196; see also *People v. Zamora* (1980) 28 Cal.3d 88, 89; 57 Ops.Cal.Atty.Gen. 307, 310 (1974).)

Applying these principles of construction, we find that California law does not

---

[2] All references hereafter to the Penal Code are by section number only.

authorize the placement of another state's prisoners in a privately operated detention facility in California. The Legislature has been careful in granting the authority to house out-of-state prisoners in California and the use of privately operated detention facilities to house prisoners. The Legislature has not, however, combined the two types of authority.

Against these specific grants of authority, we observe that a general statutory prohibition prevents prisoners from other states from being housed in a privately operated detention facility in California. Section 173 states:

> "Every . . . person, who willfully imports, brings, or sends, or causes or procures to be brought or sent, into this State, any person who is a foreign convict of any crime which, if committed within this State, would be punishable therein (treason and misprision of treason excepted), or who is delivered or sent to him from any prison or place of confinement in any place without this State, is guilty of a misdemeanor."

While the Legislature may of course enact specific statutes that would govern over the general prohibition of section 173 in particular circumstances (see Code Civ. Proc., § 1859; *Woods v. Young* (1991) 53 Cal.3d 315, 325; *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420), the Legislature has not done so here.

We conclude in answer to the second question that prisoners from other states may not be placed in custody in privately operated detention facilities in California.

3. Sheriff's Responsibility

The third question presented concerns whether a sheriff has a responsibility to respond to incidents or complaints arising out of the operation of a private detention facility housing federal inmates and detainees. We conclude that he does.

A sheriff is the chief law enforcement officer of the county. (81 Ops.Cal.Atty.Gen. 86, 87 (1998); 50 Ops.Cal.Atty.Gen. 64, 67 (1967).) The jurisdiction of a sheriff to investigate crimes extends throughout the county, including incorporated cities. (81 Ops.Cal.Atty.Gen*., supra*, 87; 8 Ops.Cal.Atty.Gen. 149, 150-151 (1946).)

A sheriff has a general duty to investigate crimes in his jurisdiction and arrest those who have committed public offenses. (See *Coffee v. Superior Court* (1905) 147 Cal. 525, 530*; Los Angeles Free Press, Inc. v. City of Los Angeles* (1970) 9 Cal.App.3d 448, 457; *Pitchess v. Superior Court* (1969) 2 Cal.App.3d 653, 657; 50 Ops.Cal.Atty.Gen., *supra*, 67-68; 36 Ops.Cal.Atty.Gen. 198, 199-200 (1960); 8 Ops.Cal.Atty.Gen., *supra*, 151.) "The sheriff shall preserve peace . . . ." (Gov. Code, § 26600.) "The sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." (Gov. Code, § 26601; see 81 Ops.Cal.Atty.Gen., *supra*, 88-89.)

As a peace officer, the sheriff's authority extends to any place in the state: (1) as to any public offense committed (or which there is probable cause to believe has been committed) within the county employing the sheriff; (2) where the sheriff has the prior consent of the chief of police if the place is within a city; or (3) as to any public offense committed (or as to which there is probable cause to believe has been committed) in the sheriff's presence when there is an immediate danger to person or property or the escape of a perpetrator of the offense. (§ 830.1.) Thus, for purposes of carrying out his basic law enforcement responsibilities, a sheriff's jurisdiction is not limited to any particular type of facility, public or private. (See, 81 Ops.Cal.Atty.Gen. 86, *supra,* [county sheriff is authorized to investigate criminal acts alleged to have occurred at a state correctional facility].)

With regard to riots and other disturbances that may arise at a privately operated detention facility housing federal inmates and detainees, we note that the sheriff is charged by Government Code section 26602 with "prevent[ing] and suppress[ing] any affrays, breaches of the peace, riots, and insurrections which come to his knowledge" and with "investigat[ing] public offenses which have been committed." As for an escape from a privately operated detention facility by a federal inmate or detainee, section 4537, subdivision (a) provides:

> "The person in charge of any secure detention facility, including, but not limited to, a prison, a juvenile hall, a county jail, or any institution under the jurisdiction of the California Youth Authority, shall promptly notify the chief of police of the city in which the facility is located, or the sheriff of the county if the facility is located in an unincorporated area, of an escape by a person in its custody."

A sheriff has discretion to examine each situation based upon the individual facts. In 81 Ops.Cal.Atty.Gen. 86, *supra*, we considered whether a sheriff was authorized to investigate alleged criminal acts at a state correctional facility. After noting a sheriff's general law enforcement responsibilities under Government Code sections 26600-26602, we stated:

> "Nevertheless, a sheriff may exercise some degree of discretion in investigating criminal activity. (See *Johnson v. State of California* (1968) 69 Cal.2d 782, 793-797; *Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 503, 506-507; *Newton v. County of Napa* (1990) 217 Cal.App.3d 1551, 1560; *Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 208, fn. 8; *Green v. City of Livermore* (1981) 117 Cal.App.3d 82, 87; *Mann v. State of California* (1977) 70 Cal.App.3d 773, 778; *Hartzler v. City of San Jose* (1975) 46 Cal.App.3d 6, 8; *McCarthy v. Frost* (1973) 33 Cal.App.3d 872, 875.) Accordingly, we do not believe that a sheriff must investigate patently frivolous charges. Also, a cursory, preliminary investigation may show the allegations to be without merit, resulting in no further investigation being necessary.
>
> "Significantly, a sheriff may not be the only law enforcement officer with jurisdiction to investigate a particular offense. (See Pen. Code, § 800.1, subd.

(a)(1). ) In similar circumstances to those present here, we concluded that 'administrative understanding and comity, subject to the availability of appropriations' may control the extent and nature of the operations of law enforcement agencies with concurrent jurisdiction over an alleged criminal offense . . . .

" 'Administrative understanding and comity' does not necessarily require a formal joint powers agreement or contract between agencies with concurrent jurisdiction in order to avoid a duplication of law enforcement efforts.  On the other hand, a sheriff must be satisfied that serious criminal charges will be investigated by some law enforcement agency with jurisdiction to act . . . .

"Other possible reasons may exist for declining to investigate a particular criminal complaint.  Each situation would require evaluation based upon the specific facts.  Of course, a sheriff may be found guilty of willful misconduct in office by failing to investigate a crime without sufficient cause.  (*Coffee v. Superior Court, supra*, 147 Cal. at 530; *People v. Mullin, supra*, 197 Cal.App.2d at 487; see *Steiner v. Superior Court* (1996) 50 Cal.App.4th 1771, 1780.)" (*Id.,* at pp. 89-90.)

A sheriff's jurisdiction and law enforcement duties thus extend to privately operated detention facilities housing federal inmates and detainees; however, a sheriff may decline to respond to incidents or complaints at a facility in limited circumstances such as when the crime report is patently frivolous, a preliminary investigation shows the allegations to be without merit, or the sheriff has an agreement that another law enforcement agency having jurisdiction over the matter (such as federal authorities or a city police department) will undertake the appropriate response.

4.  Financial Responsibility

The final question presented is whether a county may contract with the operators of private detention facilities housing federal inmates and detainees under terms requiring the operators to reimburse the county for the costs of the sheriff in responding to incidents or complaints at the facility.  We conclude that such a contract may not be executed.

Government Code section 53069.8 provides:

"(a) The board of supervisors of any county may contract on behalf of the sheriff of that county, and the legislative body of any city may contract on behalf of the chief of police of that city, to provide supplemental law enforcement services to private individuals or private entities to preserve the peace at special events or occurrences that happen on an occasional basis.  Contracts entered into pursuant to this section shall provide for full reimbursement to the county or city of the actual costs of providing those services, as determined by the county

auditor or auditor-controller, or by the city, as the case may be.

"(b) The services provided pursuant to this section shall be rendered by regularly appointed full-time peace officers, as defined in Section 830.1 of the Penal Code, or as negotiated with the respective certified employee organizations.

"(c) Peace officer rates of pay shall be governed by a memorandum of understanding.

"(d) A contract entered into pursuant to this section shall encompass only law enforcement duties and not services authorized to be provided by a private patrol operator, as defined in Section 7582.1 of the Business and Professions Code.

"(e) Contracting for law enforcement services, as authorized by this section, shall not reduce the normal and regular ongoing service that the county, agency of the county, or city otherwise would provide."

Accordingly, under this statutory grant of authority the services that may be obtained by contract are "supplemental law enforcement services" for the purpose of "preserv[ing] the peace at special events or occurrences that happen on an occasional basis."

As discussed in answer to the third question, a sheriff's duties include responding to incidents at both public and private facilities. (Gov. Code, § 26602.) Such services cannot be sold. (See 57 Ops.Cal.Atty.Gen. 423 (1974) [county service area district may not be established to provide services already included in mandated basic and uniform level of law enforcement services the sheriff is under obligation to provide]; see also 68 Ops.Cal.Atty.Gen. 175, 181 (1985).) Consequently, the types of services contemplated by Government Code section 53069.8 are the supplemental law enforcement services that may be needed to *forestall* breaches of the peace at special events or occurrences, not the law enforcement actions that are needed once an incident takes place.

We also observe that the phrase "special events or occurrences that happen on an occasional basis" implies planned events or activities, giving the sheriff the opportunity to determine how much of his resources may be expended without "reduc[ing] the normal and regular ongoing service that the county . . . otherwise would provide." (Gov. Code, § 53069.8, subd. (e).) Unplanned contingencies would not allow the sheriff the opportunity to allocate his resources in the orderly manner contemplated by the statute.

Hence, we do not believe that Government Code section 53069.8 was intended to authorize placement of the sheriff's department "on retainer" to private enterprises, placing unpredictable demands on county resources and possibly jeopardizing normal and regular law enforcement service elsewhere in the county. Our interpretation of Government Code section 53069.8 also avoids situations where the private contractor and the sheriff might disagree

9

concerning whether the particular incident was covered by the contract. Moreover, it permits the sheriff to exercise discretion in responding to a particular incident or complaint.

No other statute authorizes the county's proposed contractual agreements. We conclude that a county may not contract with private operators of detention facilities housing federal inmates and detainees under terms requiring the operators to agree to reimburse the county for the costs of the sheriff's response actions undertaken with respect to incidents or complaints at the facilities.

*****