[Civ. No. 5045.   Fourth Dist.   Nov. 30, 1956.]

LAGUNA BEACH UNIFIED SCHOOL DISTRICT OF ORANGE COUNTY, Respondent, v. MATILDA R. LEWIS, Appellant.

Kenny & Morris for Appellant.

Joel E. Ogle, County Counsel, George F. Holden and Stephen K. Tamura, Deputy County Counsel, for Respondent.

GRIFFIN, J.—Plaintiff and respondent Laguna Beach Unified School District of Orange County, a body politic, brought this proceeding under section 13529 of the Education Code against defendant and appellant, a permanent teacher employed by it, setting forth the charges for which appellant was dismissed as well as the preliminary proceedings taken by said school board and a request that the court inquire into the charges and determine whether or not they are true and, if true, whether or not they constitute grounds for her dismissal. (*Board of Education* v. *Ballou*, 21 Cal.App.2d 52, 55 [68 P.2d 389] ; *Fresno City High School Dist.* v. *De Caristo*, 33 Cal.App.2d 666 [92 P.2d 668].)

A statement of charges referred to as an exhibit in the complaint is as follows: (1) That on August 15, 1953, at

Woods Cove, near Diamond Street, in Laguna Beach, "you were guilty of unprofessional conduct in this: that at said time and place you, then and there being an employee of the Laguna Beach Unified School District, did wilfully and wrongfully distribute to persons a certain pamphlet entitled 'Time to Resist,' a copy of which is attached hereto" in violation of subsection (a) of section 13521 of the Education Code. (2) That on January 25th, 1954, at the Administration Office of the High School Building "you were guilty of unprofessional conduct in violation of subsection (a) of section 13521 of the Education Code of the State of California, in this: that at said time and place you, . . . having been duly ordered by the Governing Board . . . to appear before said Governing Board and answer a question or questions . . . pertaining to any of the matters specified in Section 12604 of the Education Code, . . . did wilfully and unlawfully, after having been shown and having read the pamphlet 'Time to Resist', . . . falsely testify" that she had not seen, read or distributed copies to any person since September 10, 1948. (3) It is then charged that these answers were false and untrue and were known by her to be false and untrue when in fact, since September, 1948, she had seen and did knowingly distribute copies of said pamphlets to persons at the time and place indicated, and that by reason thereof she was guilty of immoral conduct and dishonesty, in violation of subsections (a) and (c) of section 13521 of the Education Code. It is then alleged that on April 13, 1953, she was guilty of unprofessional conduct in this, that she was then subpoenaed to appear before a subcommittee of the Committee on Un-American Activities of the House of Representatives of the United States to testify concerning matters being investigated by said subcommittee; that she so appeared but did wrongfully fail to cooperate with said subcommittee by refusing to answer questions relating to her membership in the Communist Party. The questions and answers are then set forth and will be hereinafter described. In effect she refused to answer any questions as to membership in the Communist Party between the years 1935 and 1940, and certain other questions propounded to her pertaining to her possible present membership in that party. The board of trustees found that by reason of her conduct set forth in the charges there existed cause for her dismissal as a permanent employee of the district. ▌ The pamphlets attached to the complaint as exhibits had various titles, including "Resistance

Pamphlet No. 3, by Hugh Hardyman." They were to the effect that the verses following were not for a certain class but for "those who hold that blood and breath can serve to free mankind from fear and want" and for "those who are not frightened by a list" and those "who know the time has come to organize and to resist"; that no help comes from colleges and schools and that the young man still has a choice of what to be and if he "revolts against all killing" and chooses prison, he can still be free. It in effect condemns the United Nations troops who fought in Korea as murderers and urges the youth of this country to resist military service by choosing prison. It extols the achievements of Communist rule in North Korea, holds up our way of life to ridicule and contempt and condemns and belittles the United Nations' action in Korea. It repeats spurious Communist accusations charging the United Nations' forces with murdering civilians with napalm, Encephalitis, plague and boldly proclaims that the pamphlet is for those who "know the time has come to organize and to resist."

Appellant demurred to the complaint on the grounds (1) That several causes of action were not separately stated; (2) That the complaint was uncertain, ambiguous and unintelligible; and (3) That it did not state a cause of action, citing such authority as *Bowman* v. *Wohlke,* 166 Cal. 121 [135 P. 37, Ann.Cas. 1915B 1011]. The demurrer was overruled and appellant declined to answer the complaint. It was stipulated that respondent might proceed under section 636 of the Code of Civil Procedure and obtain a judgment as by default. Appellant appealed from the judgment.

As to the first ground, appellant relies upon the general rule stated in 21 California Jurisprudence, page 100, section 65, construing section 430, subdivision 5, of the Code of Civil Procedure allowing a demurrer upon the ground that different causes of action must be separately stated. She argues that the complaint, although in the nature of a special proceeding, must be tested under the rules prescribed by the Code of Civil Procedure, citing section 13532 of the Education Code.

■ Here the written accusation set forth in the complaint by reference specifically and separately stated the alleged grounds of the ultimate claim for her dismissal. A somewhat similar situation was presented in *In re Shepard,* 161 Cal. 171 [118 P. 513]. It was an accusation for removal of a public official under section 758 of the Penal Code, now 3060 of the Government Code. The accusation contained 13 speci-

fications of misconduct. It was there held that it is permissible to join more than one specification of misconduct, and the rule restricting indictments to a single charge, as held in the case of *In the Matter of Burleigh,* 145 Cal. 35 [78 P. 242], did not apply. The former applicable provisions of the Penal Code to such an accusation are now found in the Government Code, section 3060 et seq., pertaining to public officers and employees in general and their removal from office. Section 1028.1 of the Government Code pertains to refusal of public employees to testify pertaining to knowing present or past membership in the Communist Party. This change from section 758 of the Penal Code to section 3060 of the Government Code would not necessarily change the rule of procedure set forth in the Shepard case pertaining to the removal of public officers and employees in general. The complaint and accusation in the instant case fully set forth three separate specifications wherein the grounds of claimed misconduct and dishonesty were quite fully related. The Legislature has not attempted to catalogue or define all the acts which constitute misconduct or dishonesty but did classify certain acts as constituting misconduct, or which would constitute a cause for dismissal. (Gov. Code, § 1028.1; Gov. Code, § 3060 et seq.; Ed. Code, §§ 12603, 12604, 13521; *Board of Education* v. *Wilkinson,* 125 Cal.App.2d 100 [270 P.2d 82]; *Reid* v. *Superior Court,* 44 Cal.App. 349 [186 P. 634]; 21 Cal.Jur. p. 987, § 151.)

Section 427 of the Code of Civil Procedure gives a plaintiff the right to unite certain prescribed causes of action in the same complaint. The charges herein made are not mentioned in that section as causes of action that may be joined. (1 Cal.Jur.2d p. 645, § 42.) The statutes (Gov. Code, § 3072; Ed. Code, §§ 12603, 12604; and Gov. Code, § 1028.1) describing certain actions as grounds for dismissal, fix but one penalty, i.e., that of dismissal.

It was definitely held in *Loveland* v. *Garner,* 71 Cal. 541 [12 P. 616], which was an action brought by a stockholder against directors of a corporation to recover a penalty for several separate breaches of duty in reference to their office, that since the statute in terms provides for but a single penalty, no other or greater sum may be recovered, although violations of the statute may have been frequent, and said, at page 544:

"But it does not follow from this that the plaintiff may

not join together in one count several of such alleged violations, and prove any one of them in his power, as they constitute separately or together but one cause of action.''

See also *Board of Education* v. *Wilkinson,* 125 Cal.App.2d 100 [270 P.2d 82], where unprofessional conduct was charged and more than one cause for dismissing was set forth in the same count. (*Board of Education* v. *Ballou,* 21 Cal.App.2d 52 [68 P.2d 389]; *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261].)

Here, the charges were made in simple language and were broad enough to fairly advise the employee of their nature so she could properly prepare a defense thereto. The complaint incorporates those charges and also sets them forth in detail, in separate and distinct specifications, and also sets forth the testimony taken before the Board in support of the charges. We conclude that only one cause of action is stated. The demurrer to the complaint on the claimed ground that several causes of action were improperly joined or not separately stated was properly overruled.

It is next claimed that the complaint is uncertain because it is not indicated therein the name of the person or persons to whom it is alleged she wrongfully distributed the pamphlet at Woods Cove, citing such authority as *Money* v. *Anderson,* 208 F.2d 34, 37; and *United States* v. *Potter,* 56 F. 83, 89. It is further argued that there is no direct allegation that the pamphlet is subversive or improper in character. The complaint sufficiently described the act charged. It does not appear that the respondent had any greater knowledge of the name of such person or persons than did the appellant. The pamphlet is set out in full in the complaint and it might well appear therefrom its true character and that appellant was guilty of unprofessional conduct in distributing it. The complaint was not uncertain.

As to the failure of the complaint to state a cause of action, at the time here noted, if any one of the charges or all of the charges considered together alleged facts sufficient to constitute grounds for dismissal, the general demurrer was properly overruled. (*Gipner* v. *State Civil Service Com.,* 13 Cal.App.2d 100, 107 [56 P.2d 535]; *Shewbridge* v. *Police Com. of the City & County of San Francisco,* 64 Cal.App.2d 787 [149 P.2d 429].) We will therefore consider the charges alleged.

As to the distribution of the pamphlets, appellant

concededly had taken an oath under section 12100 of the Education Code to support the Constitution of the United States of America and of California, and its laws and would "by precept and example, promote respect for the Flag and the statutes of the United States and of the State of California, reverence for law and order, and undivided allegiance to the Government of the United States of America." A violation of that oath constitutes unprofessional conduct and is a ground for dismissal. (*Board of Education* v. *Jewett*, 21 Cal.App.2d 64 [68 P.2d 404].) ▇ A teacher who distributes pamphlets of the character here indicated in the very community in which she is employed to teach could hardly be said to be promoting "by example" respect for the flag and the statutes of the United States, reverence for law and order, and undivided allegiance to the United States, nor can she be said to possess the qualifications necessary for the performance of the duties imposed upon her by section 13230 of the Education Code. (*Board of Education* v. *Wilkinson*, 125 Cal. App.2d 100, *supra*; *Faxon* v. *School Committee of Boston* (1954), 331 Mass. 531 [120 N.E.2d 772, 774, 44 A.L.R.2d 781].) She argues that such conduct outside of classrooms cannot form the basis for dismissal, and that the specification does not allege whether the pamphlets were distributed to classroom pupils or interested parties.

In *Board of Education* v. *Swan* (1953), 41 Cal.2d 546, 552 [261 P.2d 261], it was held that derogatory utterances concerning the school board made by a teacher outside of classrooms constituted sufficient grounds for dismissal, and rejected the same argument which appellant here makes. It cited *Goldsmith* v. *Board of Education*, 66 Cal.App. 157 [225 P. 783], describing the term "unprofessional conduct" as that which violates the rules or ethical code of the profession, or such conduct which is unbecoming a member of the profession in good standing, such as violation of a teacher's oath as prescribed by the School Code, and said the calling (of a teacher) is so intimate, its duty so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment; that the teacher is entrusted with the custody of children and their high preparation for useful lives. Her habits, speech, good name, cleanliness, and the wisdom and propriety of her unofficial utterances and associations are all involved; that no one has a natural or inherent right to teach in a public school and the Legislature, for

reasons of public policy, may make the right to teach in any particular school subject to a broad discretion in the school authorities to dismiss for causes which come within certain designations. ▮ If a teacher may be dismissed for unprofessional conduct as in the Swan case, for disloyal utterances outside of classrooms respecting her employer, then, *a fortiori*, she may be dismissed for disloyal utterances against her country. ▮ We conclude that a ground for dismissal in this respect was sufficiently sustained.

It is then contended that no sufficient grounds were pleaded or shown which would constitute unprofessional, immoral or dishonest conduct by her at the time she appeared before the board of trustees. In this connection it is argued that there is no pleading indicating that her testimony relating to the pamphlet was material, and the subject of inquiry was beyond the jurisdiction of the board and not within the authorized scope of inquiry under section 12604 of the Education Code.

Section 12605 of the Education Code makes it the duty of the employee of a school district who is ordered before the governing board, to answer, under oath, questions relating to any of the matters specified in section 12604, *supra*. The inquiry relating to the distribution of the pamphlet was relevant and material, either to show personal advocacy of the forceful or violent overthrow of the government (§ 12604, subd. (a)) or present knowing membership in the Communist Party (§ 12604, subd. (e)). Usually, membership or allegiance to the party can only be established by circumstantial evidence. Congress, in enacting the Communist Control Act of 1954 [P.L. 637, 83rd Cong. 2d Sess.] listed in section 5 thereof various acts or conduct which a jury may consider in "determining membership or participation in the Communist Party" and among them are:

"(9) Has prepared documents, pamphlets, leaflets, books, or any other type of publication in behalf of the objectives and purposes of the organization;

"(10) Has mailed, shipped, circulated, distributed, delivered, or in any other way sent or delivered to others material or propaganda of any kind in behalf of the organization. . . ."

In *Adler* v. *Board of Education*, 342 U.S. 485 [72 S.Ct. 380, 385, 96 L.Ed. 517, 27 A.L.R.2d 472], it was said:

"That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their

fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted. One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty.''

■ It is now settled that a state or its agencies may constitutionally require disclosures of facts relating to any employee's loyalty as a condition of continued public employment. (*Garner* v. *Board of Public Works*, 341 U.S. 716 [71 S.Ct. 909, 95 L.Ed. 1317]; *Pockman* v. *Leonard*, 39 Cal.2d 676 [249 P.2d 267]; *Adler* v. *Board of Education, supra.*)

■ Appellant's knowing false denial before the respondent board of seeing the pamphlets described and her false denial of participating in the distribution of them, if established as true, may be classified as being dishonest, hostile to the welfare of the general public, and contrary to good morals. (*Orloff* v. *Los Angeles Turf Club, Inc.*, 36 Cal.2d 734, 740 [227 P.2d 449]; *Midway School Dist.* v. *Griffeath*, 29 Cal.2d 13, 18 [172 P.2d 857]; *Board of Education* v. *Swan, supra.*)

The last claim is that appellant had a right to refuse to testify before the House Un-American Activities Committee relating to her claimed membership in the Communist Party prior to September 10, 1948, the date referred to in the Dilworth Act (Stats. 1953, chap. 1632, p. 3341).

It was held in *Pockman* v. *Leonard*, 39 Cal.2d 676 [249 P.2d 267] (quoting from the syllabus):

"Portion of oath prescribed by Gov. Code, Sec. 3103, requiring affiant to list any organizations, to which he has belonged in the five years preceding taking of the oath, that advocated overthrow of the government by force or violence or other unlawful means, calls for a statement of past loyalty which is relevant to present and future loyalty, and is not inconsistent with the spirit or intent of the oath prescribed by'' the Const., art. XX, § 3.

Assuming appellant had a right to refuse to answer the question insofar as it related to any membership in the party prior to that date, there were other questions which she refused to answer which bore directly on the question as to her present or past knowing membership in the Communist Party since that time. She was asked if she was acquainted with Leroy Herndon. She replied: "I will not answer any questions pertaining to my former husband or pertaining to the time I was married to him. I therefore refuse to answer any question for the reasons previously stated.'' (Cannot be

compelled to give evidence against myself.) A statement was then made to her: "Mr. Herndon testified under oath before this committee, during the recent hearings, he was a member of the Communist Party and a member of a teachers' unit in Los Angeles County. During the course of his testimony he stated that Matilda Lewis was also a member of this group. Is Mr. Herndon's testimony correct?" She declined to answer for the reasons stated. She was then asked if she was acquainted with Anne Kinney and she refused to answer on the same grounds. The statement was made that "She (Anne Kinney) testified in an executive statement on December 22, 1952, that she was also a member of the Communist Party and also assigned to the teachers' unit, the same group as Mr. Herndon, and she has testified under oath you were also a member of that group. Is that correct?" She declined to answer this for the reasons stated. She also declined, for like reasons, to answer as to whether or not she was a member of the Communist Party between the years 1935 and 1940. Whether she knew or had been associated with these individuals since September 10, 1948, was material, in reference to the inquiry pertaining to her membership therein since that date, as a circumstance bearing directly on her present loyalty.

It was held in *Pockman* v. *Leonard*, 39 Cal.2d 676 [249 P.2d 267] (syllabus 13) that:

"A person's associates, as well as his conduct, are relevant factors in determining fitness and loyalty, and the state, under its police power, may properly limit a person's freedom of choice between membership in organizations advocating overthrow of the government by force and employment in the school system"; and in syllabus 16:

"Assuming that a permanent employee of a state college, with teacher's tenure, has a contract right to his position, an implied condition of the agreement is that he will be loyal to the government and that he will not advocate its overthrow by force, and the state under its police power may, as a means of implementing the implied condition, require such employee to make a declaration of loyalty and furnish relevant information."

Since appellant has chosen not to answer and deny the facts alleged in the charges set forth in the complaint, but elects to stand upon her demurrer, we must, under the law, in construing the complaint and demurrer thereto, as-

sume, as true and admitted, all facts well pleaded which are legally provable. (21 Cal.Jur. p. 96, § 62.) We conclude that the demurrer was properly overruled.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 23, 1957. Carter, J., was of the opinion that the petition should be granted.