[Crim. No. 15. Fifth Dist. Nov. 29, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. MERVIN M. MULLIN, as Sheriff, etc., Defendant and Appellant.

T. R. Vilas for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

FACTS

STONE, J.—Appellant, the Sheriff of Tuolumne County, took office January 1, 1959. He had been a California Highway Patrol officer in that county for 27 years preceding his election and qualification as sheriff. An accusation was returned by the grand jury charging him with willful misconduct in office. The charge was based upon appellant's handling of an incident concerning one Donna Huff, then 15 years of age, who complained to appellant that her father had been molesting her. The accusation consisted of one count, which charged:

"That said MERVIN M. MULLIN did on or about the 21st day of June, 1959, willfully refuse to investigate a complaint made to him by Donna Huff, now Donna Huff Bailey, accusing her father, Dan L. Huff, of the commission of the crime of a violation of Section 285 of the Penal Code of the State of California, alleged to have occurred in the County of Tuolumne, State of California, within one year prior thereto; and did willfully conceal the commission of the alleged offense from the juvenile authorities, from the District Attorney of Tuo-

lumne County, from the Grand Jury of Tuolumne County, and from any Judicial District Court of Tuolumne County having jurisdiction to issue a Warrant of Arrest on such charge; and did willfully fail and refuse to furnish protection to the said Donna Huff Bailey, who was then a minor female of the age of 15 and did willfully force and compel her to return to the home of her parents with no criminal or protective action or proceeding being taken to protect said minor from the further commission of such felonious acts upon her by her father.

"That during all said times hereinabovementioned, the said MERVIN M. MULLIN was the duly elected, qualified and acting Sheriff-Coroner of the County of Tuolumne, State of California."

A jury found the sheriff guilty as charged. His motion for a new trial was denied, and this appeal followed.

On June 24, 1959, Donna Huff was with her father at his logging camp in the Sugar Pine area of Tuolumne County. On that day a Mrs. Rivera, Donna's aunt, reported to Deputy Sheriff Lux that the girl had complained that her father was molesting her. Deputy Lux orally advised the sheriff of the incident, and then made a written report. Appellant told Lux that the girl's mother had telephoned him from Mountain View saying that she would be at the sheriff's office the following morning with an attorney. Appellant and his deputy made no effort to locate Donna that day. The following morning the father and the girl drove to the town of Twain Harte to obtain supplies. The girl slipped away, telephoned the sheriff's office from a restaurant, and hid in the restroom until a deputy named Webb arrived. Donna accompanied him to the sheriff's office, where appellant took her into a separate room for interrogation. No one else was present, and there is sharp disagreement as to what was said. Appellant testified to the substance of the conversation as follows:

"Well, I asked her if her father had molested her, and she said that he had, and I asked her, 'Now,' I says, 'You are sure of this, are you?' And she says, 'Yes.' And I said, 'When did this take place?' and she kind of shrugged her shoulders. Well, she didn't know just exactly, and I said, 'Was it last night, yesterday, or the night before, or when was it?' She says, 'Well, several days ago.' And so I said, 'You know this is a serious charge' I says, 'If we bring this against your father, you may have to testify against him in court' and she

says, 'I don't want to testify against my father,' and I says, 'Well, do you realize what this is all about now? You may have to testify.' She says, 'Well, I won't testify. All I want to do is get away from my father and the sticks,' and she says, 'I'm old enough to take care of myself.' "

The alleged refusal of the girl to testify against her father is the sheriff's excuse for not making an investigation; his reason for failing to notify the juvenile authorities of the girl's charges; and his justification for not delivering the girl to juvenile authorities or to otherwise protect her.

The girl denied that appellant discussed the details of the case with her at the jail, stating that after a short preliminary conversation he invited her to go to his house to shower and put on some clean clothes. Further, she denied ever refusing to testify against her father or at any time refusing to co-operate with the authorities.

Appellant took the girl to his home, where his wife and his niece helped her bathe; they also furnished her clean clothing and they gave her lunch. After lunch, Mrs. Rivera, the aunt, and an attorney, a Mr. De Goia, arrived at appellant's home. De Goia was attorney for the brother of Donna's father, and he had driven to Sonora from Mountain View that day with the uncle and Donna's mother. After some conversation, Donna's aunt left the house, but De Goia remained. Later De Goia accompanied Donna out of the house and to the car. The testimony concerning the manner of Donna's leaving with De Goia is conflicting. Her testimony was that she refused to leave with him because she feared that he would take her to her father. She also testified that she pleaded with appellant for help and asked permission to remain, but that the sheriff ignored her entreaty and let De Goia take her by the arm and force her out of the house.

The attorney, the mother and Donna drove to Mountain View, where Donna stayed with her mother approximately four days. The entire family then returned to their home in Tuolumne County. Donna testified that within two weeks her father was again having intercourse with her, and that he also forced her to commit acts of oral copulation upon him. Later the family moved to Marin County, and on May 23, 1960, the father was charged by an information filed in the superior court of that county with three counts, one, the statutory rape of his daughter on March 20, 1960; two, incest, occurring March 20, 1960; and, three, violation of Penal Code section 288a, occurring March 27, 1960. De Goia appeared

as the father's attorney in the Marin County action. The father pleaded guilty to the charge of statutory rape, whereupon the counts charging incest and violation of Penal Code section 288a were dismissed "in the interests of justice." Following his plea of guilty, the father was first temporarily committed as a sexual psychopath, and later committed for an indeterminate period. A certified copy of each proceeding was admitted in evidence on the theory that these documents rehabilitated the testimony of Donna.

## Questions Raised on Appeal

The following four grounds of appeal are asserted: (1) errors in instructions given covering willful misconduct and in the court's refusal to give instructions submitted by defendant covering the same subject; (2) insufficiency of the evidence to support the charges of (a) concealment of the crime from other county officials, and (b) failure to provide protection for Donna Huff; (3) prejudicial misconduct of the district attorney by his remarks during argument to the jury; (4) error by the court in admitting into evidence certified copies of the record of subsequent proceedings in Marin County, under the doctrine of rehabilitation.

## Instructions—Willful Misconduct in Office

An accusation which is statutory in origin is presently embodied in Government Code, section 3060, former Penal Code section 758. Government Code section 3060 provides that:

"An accusation in writing against any officer of a district, county, or city, . . . for wilful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed. An accusation may not be presented without the concurrence of at least 12 grand jurors."

Since appellant is not charged with corrupt misconduct, we are concerned only with "wilful misconduct," a term so general in scope that we must look to the authorities for its interpretation. It has been held that misconduct need not include an act which would itself constitute a crime, since the main purpose of an accusation is to remove a person from a public office. (*In the Matter of Burleigh*, 145 Cal. 35, 37 [78 P. 242].)

In *People* v. *Harby*, 51 Cal.App.2d 759, 767 [125 P.2d 874], the court decided that the misconduct upon which an accusation may be predicated does not necessarily imply

corruption or criminal intention. (See also *People* v. *Elliott*, 115 Cal.App.2d 410, 414 [252 P.2d 661].) Misconduct means simply a purpose or willingness to commit the act. (*People* v. *Becker*, 112 Cal.App.2d 324, 326 [246 P.2d 103]; Pen. Code, § 7, subd. 1.) The Supreme Court said, in *Coffey* v. *Superior Court*, 147 Cal. 525, 529 [82 P. 75], "The phrase 'misconduct in office' is broad enough to include any willful malfeasance, misfeasance, or nonfeasance in office." (See *People* v. *Harby*, *supra*.)

With the foregoing exposition of the term "willful misconduct" in mind, we turn to appellant's contention that the trial court erred by refusing to give two instructions proffered by him. One reads as follows:

"DEFENDANT'S INSTRUCTION No. 3: You are instructed that the accusation in this case charges the defendant with wilful misconduct in office. Accordingly, the defendant cannot be convicted unless it is proved to a moral certainty and beyond all reasonable doubt that he wilfully and intentionally did the acts charged or neglected to perform the duties charged, *with intent to commit misconduct, knowing that said acts or omissions were misconduct in office.*" (Emphasis added.)

The trial judge correctly noted that the concluding language, "with intent to commit misconduct, knowing that said acts or omissions were misconduct in office," is not the law. The authorities heretofore cited hold that it is not necessary that the accused committed the acts or omissions charged with an intent to commit misconduct. Nor is it necessary that the accused knew that the acts or omissions charged constituted misconduct in office. The instruction was properly refused.

 The other instruction which appellant argues should have been given, reads as follows:

"DEFENDANT'S INSTRUCTION No. 2: Wilful Misconduct is something more than an act or omission resulting from a mistake of judgment, or from lack of experience or competence. You are accordingly instructed that if you find, or there is a reasonable doubt in your mind that the acts or omissions charged resulted from a mistake of judgment, *or* from lack of experience *or* competence, you shall find the defendant not guilty." (Emphasis added.)

An instruction similar to the foregoing was given by the court but the words "or from lack of experience or competence" were omitted, and properly so. Lack of experience or competence may have a bearing on the question of mistake

of judgment, and these factors may be weighed by the jury in determining the question of whether the acts charged resulted from a mistake of judgment. Appellant's instruction, however, by using the disjunctive conjunction ''or,'' incorrectly made inexperience, standing alone, or incompetence, alone, a defense to an accusation charging willful misconduct.

### Sufficiency of the Evidence

Appellant next argues that there is no evidence of a substantial nature to support the three overt acts charged in the accusation. ■ The first charge, that appellant willfully failed to investigate the public offense, as required by Government Code, section 26602, is not seriously challenged. Considering that appellant failed to question the father, the mother, the aunt who made the first complaint, or two employees at the logging camp to whom Donna had revealed her plight, any attempt to maintain that a proper investigation was made would be grasping at straws.

■ The second overt act charged was that appellant ''did willfully conceal the commission of the alleged offense from the juvenile authorities, from the District Attorney of Tuolumne County, from the Grand Jury of Tuolumne County, and from any Judicial District Court of Tuolumne County having jurisdiction to issue a Warrant of Arrest on such charge.'' Appellant argues that there is no evidence that he concealed anything from anyone or any agency named in the accusation. Concealment, however, in the sense here used, does not necessarily require an affirmative act, as appellant seems to suggest. Nonfeasance constitutes misconduct in office equally with malfeasance or misfeasance.

Appellant had been notified through two different sources that a serious felony had been committed. As we have noted, appellant does not take the position that the acts did not occur; rather, he attempts to justify his actions upon the ground that he could not prove his case without the testimony of the girl. Nonetheless, appellant was under a duty to investigate the case after receiving the girl's complaint, and upon learning of a similar complaint made by the aunt to Deputy Lux. If appellant elected not to have his office make an investigation, his minimal duty was to notify the district attorney, or the juvenile authorities, or the grand jury, of the charges, the seriousness of which demanded that some agency of the county make a thorough investigation. Also bearing on this count is the disappearance of eight pages of notes that appellant

testified he made while interrogating Donna, together with the disappearance of the report made by Deputy Lux. The jury could have justifiably believed that the sheriff deliberately suppressed or destroyed these reports to conceal them from the district attorney, the grand jury, or the juvenile authorities. Thus, there is evidence susceptible of an inference of active concealment, as well as the evidence of nonfeasance.

The charge of concealment from any judicial district court of Tuolumne County finds its basis in Government Code, section 26601, which provides: "The sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." Instead of arresting the father, or even questioning him, appellant turned the girl over to the father's attorney.

■■■ Discussion of appellant's contention that there is nothing in the record to support the third overt act charged, namely, failure to furnish protection to the said Donna Huff Bailey, is closely related to the charge of concealment of the commission of the offense from juvenile authorities, which we have just discussed. Donna testified that she did not want to go home with attorney De Goia, who was admittedly her uncle's attorney and, as it developed, her father's attorney. She testified as follows:

"A. Well, then, Mr. Mullin and I and the attorney, we went into the living room, and that was when Mr. DeGoia told me he was going to take me home.

"Q. He told you that? A. Yes.

"Q. Now, after he told you that he was going to take you home, what happened? A. Well, I told him I didn't want to go home. I told him if I went home I just might as well be dead, because my father would kill me.

"Q. Was the sheriff present when you told him this? A. Yes.

"Q. What did the sheriff do? A. He didn't do anything, and I turned and I asked him please not to let this man take me back home, and he didn't do anything. He didn't even answer me.

"Q. Now, what did the attorney do, then, after you had explained this, or made this request of the sheriff? A. He said that he was told to come down here and get me, and that is exactly what he was going to do, and I said, 'I am not going with you,' and he took hold of my arm, and pulled me out of the door.

"Q. Did you again ask for aid? A. Yes.

"Q. How? A. I said, 'Please, Mr. Mullin, don't let this man take me with him.'

"Q. And did the sheriff do anything to help you? A. No.

"Q. Were you crying? A. Yes."

Donna also testified that about two weeks after she left appellant's home with De Goia, her father resumed intercourse with her and forced her to commit an act of oral copulation. Aside from the duty of a law enforcement officer to protect any individual from criminal assault, appellant was under a specific statutory duty to protect the minor. Welfare and Institutions Code, section 700, provides:

"*Persons subject to jurisdiction.* The jurisdiction of the juvenile court extends to any person under the age of 21 years who comes within any of the following descriptions: . . .

"(d) Whose home is an unfit place for him, by reason of neglect, cruelty, or depravity of either of his parents, or of his guardian or other person in whose custody or care he is.
. . .

"(k) Who is leading, or from any cause is in danger of leading, an idle, dissolute, lewd, or immoral life. . . .''

The very purpose of the statute is to provide protection for juveniles who find themselves in a position similar to that in which Donna became enmeshed. It was appellant's duty to notify the juvenile authorities as officers of the juvenile court, of Donna's complaints. His failure to do so sufficiently supports the jury's finding of willful misconduct.

Appellant argues that Donna's testimony cannot support the charge of failure to protect her, because she was impeached. As he points out, she was contradicted by other witnesses, even her mother. [■■] Donna's testimony is not inherently improbable, however, and we find applicable the rule laid down in *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758] :

"Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] ■■■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ■■■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury

to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.''

## ALLEGED MISCONDUCT OF DISTRICT ATTORNEY

Appellant assigns as misconduct and reversible error, three statements made by the district attorney during his argument to the jury. Two of the three challenged remarks are similar in nature, and will be considered together. The district attorney argued, in substance, that because of an agreement between appellant and attorney De Goia to keep the incident quiet, appellant (a) failed to investigate properly; (b) turned the girl over to her father's attorney; and (c) arranged for the disappearance of the report of Deputy Lux. Appellant argues that use of the word ''agreement'' implies a ''deal,'' and that ''deal'' implies a ''bribe.'' The district attorney did not use the word ''deal'' or the word ''bribe.'' The evidence discloses that appellant and De Goia held a conversation prior to the occurrence of the events which the district attorney argued emanated from an agreement between them. Since the argument constituted an inference derived from occurrences which are reflected by the record, it cannot be said that the deduction drawn by the district attorney was so unreasonable that it constituted misconduct of a reversible nature.

 Next, appellant argues that the district attorney inferred in his argument, that the sheriff had committed a crime, and in support thereof he quotes in his brief the following excerpt from the district attorney's closing argument to the jury:

''I would never have tried to bring this proceeding and bring it before the grand jury. I would have tried to bring some criminal offense against the Sheriff which I could institute by the filing of a complaint myself.''

The quoted argument by the district attorney was by way of answer to the charge made during argument by appellant's counsel that the accusation against the sheriff was politically inspired. The foregoing quotation by appellant is taken out of context, the full statement being as follows:

''Now, if I had been politically inspired, ladies and gentlemen, I would never have tried to bring this proceeding and bring it before the Grand Jury. I would have tried to bring some criminal offense against the sheriff, which I could institute by the filing of a complaint myself. Instead, ladies and gentlemen, this matter was brought before the Grand Jury

of this county. The Grand Jury of this county unanimously brought back an accusation against the sheriff after hearing the evidence in this case. Now, if this is politically inspired, ladies and gentlemen, not only am I trying to get the sheriff's job, or whatever else Mr. Vilas is trying to make you believe, but the Grand Jury are mere puppets in my hands.''

When read in context, the statement does not carry the sinister implication that it does when isolated. Since it was made in answer to the cry of ''politics,'' an allegation which finds no support in the record, the remarks of the district attorney do not appear to have exceeded the limits of permissible argument under the circumstances. Furthermore, had counsel been apprehensive lest the jury get the impression the district attorney was inferring that the sheriff had committed a crime, it was counsel's duty to object and request an admonition from the court. His failure to do so would indicate that as he listened to the argument in context, the suggestion he now finds was not then manifest.

### HEARSAY REHABILITATION

Finally, appellant assigns as error the admission into evidence of certified copies of criminal proceedings in Marin County. The proceedings, which have heretofore been related, occurred subsequent to the subject matter of the instant action. The circumstances surrounding the admission of the evidence are these: First, Donna testified that she was willing to cooperate with appellant-sheriff; he then testified that Donna refused to testify against her father; Donna's mother also testified that the girl told her the offenses never took place. By way of rehabilitation, Donna testified that she complained about her father's acts to the Marin County authorities; that she cooperated with them in bringing charges against her father; that the information was filed as a result of her charges; that she was in court when her father was arraigned and pleaded guilty to the statutory rape charge; and that at all times she cooperated with the Sheriff and District Attorney of Marin County. To further bolster her testimony by way of rehabilitation, the district attorney offered certified copies of the aforementioned documents concerning the proceedings in Marin County. The court admitted them, admonishing the jury that the evidence was received, not to prove the truth of the facts which subsequently occurred, but for the limited purpose of rehabilitating the testimony of Donna Huff. Respondent argues that by rehabilitation the

court had reference to the implication of recent fabrication by Donna, although the court did not specifically so state.

It is well established that a witness whose testimony has been attacked by an express or implied charge of recent fabrication, may be rehabilitated by the introduction of prior consistent acts or statements, even though the statements are hearsay. (*People* v. *Kynette*, 15 Cal.2d 731, 753 [104 P.2d 794]; *People* v. *Hardenbrook*, 48 Cal.2d 345, 351 [309 P.2d 424].) The rehabilitating evidence, however, must relate directly to the alleged recent fabrication. Here the exhibits were not directly connected with Donna's testimony other than by her own statement. Had the sheriff, or the district attorney, or a juvenile officer, of Marin County testified that Donna was willing to testify against her father and that the proceedings in Marin County were initiated by reason of her cooperation with the law enforcement authorities, such testimony would have been admissible under the theory of rehabilitation. We think it was error to admit the documents without some independent evidence directly connecting Donna's testimony with the documents. Respondent argues that the certified copies of the proceedings in Marin County can be connected with Donna's testimony by inference. It is equally possible that the Marin County proceedings resulted from available evidence or testimony other than Donna's. Exceptions to the hearsay rule should be strictly construed when, as here, the nature of the hearsay evidence might have a tendency to inflame the minds of the jurors despite the admonition of the court. Yet the record in this case, which we have reviewed with care, convinces us that no miscarriage of justice resulted. Ample evidence of a substantial nature supports the jury's verdict. (Calif. Const., art. VI, § 4½; *People* v. *Chavez*, 50 Cal.2d 778, 792 [329 P.2d 907]; *People* v. *Giguiere*, 163 Cal.App.2d 453, 459 [329 P.2d 512].)

The judgment and the order denying a new trial are affirmed.

Conley, P. J., and Brown, J., concurred.