[Crim. No. 153.   Fifth Dist.   Feb. 5, 1965.]

THE PEOPLE, Plaintiff and Appellant, v. WALTER R. HALE, as County Auditor-Controller, etc., Defendant and Respondent.

114

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Appellant.

Adon V. Panattoni and Floyd V. Gibbert for Defendant and Respondent.

CONLEY, P. J.—Upon suggestion of the court, with the acquiescence of respective counsel, three phases of the prosecution of Walter R. Hale, Auditor-Controller of the County of Sacramento, State of California, arising from an accusation brought against him by the Grand Jury of Sacramento County were dealt with in contemporaneous arguments. The proceeding first requiring a ruling is a motion on the part of the respondent to dismiss, on the basic ground that the law does not permit an appeal from the determination of the trial court that there was a complete lack of evidence to warrant the presentment of an accusation against Mr. Hale during his current term of office; secondly, if the motion to dismiss should be denied, we must consider the appeal itself; and thirdly, if the motion to dismiss the appeal is approved, it will be incumbent upon us to consider whether the state's alternative request for a writ of mandate should be granted; in this latter connection, the People petitioned for a writ of mandate requiring the trial court to receive the plea of Mr. Hale as to the truth of the accusation and, in the event of a plea of not guilty, to try the case, on the theory that, if the trial court acted without authority in sustaining the objection to the accusation, such ruling was completely outside of the jurisdiction of the trial court, and a nullity (see *People* v. *Superior Court post*, p. 873 [42 Cal.Rptr. 542]). Upon the conclusion of the argument, this court ordered the submission of all three questions.

On June 17, 1963, the grand jury returned an accusation against the respondent, Walter R. Hale, who presently is the Auditor-Controller of the County of Sacramento, (originally appointed by the board of supervisors of that county, but, since, reelected to a full term by the voters) charging him with wilful misconduct in office. The accusation was one of the end results of a protracted and eye-opening investigation of a garbage franchise in Sacramento County, the record of which involved a reporter's transcript of 1,590 pages and almost 100 written exhibits. This lengthy record contains more than one intimation of personal corruption and unhappily raises questions concerning the efficiency of selected public representatives in attempting to solve some of the complex problems of urbanization. The duty of each of the justices of this court, however, is not to attempt to act as a Cato, but to determine whether, under the law, the rights of the respondent were correctly apprehended and enforced by the trial judge.

The accusation states that on January 6, 1958, the county awarded to North American Waste Disposal Service Company

(NAWDSCO), a copartnership, then consisting of Allen T. Olson, Ben G. Petrucci, Ralph Scovel and Joseph Arbini, an exclusive garbage franchise, which fixed the rates to be charged for service to the public in the northern part of the county; it provided, among other things, that there could be a review of such rates by the board of supervisors at any time after it had been in effect for three years; that Walter R. Hale had been the accountant for the partnership when it began business, and that he had "set up its books and supervised the keeping of its accounts and those of some of its interlocking companies until January, 1961"; that "The said WALTER R. HALE well knew that North American Waste Disposal Service Company had made excessive profits from its said franchise, that its books were irregularly set up and maintained, and that audit of the said books would be embarrassing to the said company and to the said WALTER R. HALE"; that about June 1, 1961, an audit of the records and books of the company was begun under the direction of the then Auditor-Controller of Sacramento County; that by September 1, 1961, the audit had substantially progressed and had revealed the existence of excessive profits and possible irregularities in management and accounting; that about September 1, 1961, Walter R. Hale became the auditor-controller and served as such until the end of his term of office on January 7, 1963; that, upon taking office, the said Hale caused work on the audit to be stopped and "suppressed the information theretofore developed thereby"; that on January 7, 1963, he entered upon a new, but consecutive, term of office by reason of his election to the position and that he has served as such ever since. The accusation ends as follows:

## VII

"At all times since September 1, 1961, and specifically throughout his present term of office, the said WALTER R. HALE has wilfully and corruptly suppressed and concealed information concerning the earnings and transactions of North American Waste Disposal Service Company which would, in the ordinary course of business, have come to the attention of the Board of Supervisors of the County of Sacramento.

## VIII

'At all times since September 21, 1961, and specifically throughout his present term of office, the said WALTER R. HALE has wilfully and corruptly exerted influence to delay, confuse and avert independent investigation of the earnings and trans-

actions of the said North American Waste Disposal Service Company by or at the direction of the Board of Supervisors of the County of Sacramento.

## IX

"That the information concerning the earnings and transactions of the said North American Waste Disposal Service Company which was suppressed and concealed as aforesaid by the said WALTER R. HALE was material and relevant to administration of the said franchise by the Board of Supervisors of the County of Sacramento, and its prompt and complete revelation was required in the public interest."

Upon arraignment, the defendant filed objections (Gov. Code, §§ 3065 and 3066) to the accusation on the following grounds:

"(1) That the evidence presented to the grand jury does not show any evidence of misconduct on the part of the accused, WALTER R. HALE.

"(2) That the evidence presented to the Grand Jury does not show any evidence of misconduct on the part of the accused, WALTER R. HALE, during his present term of office."

The trial court finding that "there is no evidence in the record of any misconduct on the part of the accused, WALTER R. HALE, during *his present term of office*" sustained the objections and ordered the dismissal of the accusation. (Italics added.) Within 10 days thereafter, the Attorney General filed a notice of appeal, and respondent now moves to dismiss the appeal on the ground that the law does not permit it.

The action was originally given a civil number by the clerk of the Third District Court of Appeal (where the appeal was lodged prior to the removal of the cause to this district by order of the Supreme Court), and, upon transfer, the clerk of this court followed that precedent by assigning a civil number to the action. This was a minor and relatively unimportant error; for clearly this should be treated as a criminal proceeding rather than a civil matter. (*People* v. *McKamy,* 168 Cal. 531 [143 P. 752]; *In re Shepard,* 161 Cal. 171 [118 P. 513]; *In re Burleigh,* 145 Cal 35 [78 P. 242]; *Kilburn* v. *Law,* 111 Cal. 237 [43 P. 615]; *Wheeler* v. *Donnell,* 110 Cal. 655 [43 P. 1]; *In re Curtis,* 108 Cal. 661, 662 [41 P. 793]; *Thurston* v. *Clark,* 107 Cal. 285, 289 [40 P. 435]; *Gibson* v. *County of Sacramento,* 37 Cal.App. 523, 528 [174 P. 935]; *Coffey* v. *Superior Court of Sacramento County,* 2 Cal.App. 453 [83 P. 580]; *People* v. *Mullin,* 197 Cal.App.2d

479 [17 Cal.Rptr. 516]; *Laguna Beach Unified School Dist. of Orange County* v. *Lewis,* 146 Cal.App.2d 463, 467 [304 P.2d 59].) Consequently, this court has ordered the assignment of a new criminal number to the case.

A preliminary question, which should be finally disposed of, is whether or not the scope of the accusation must be rigidly restricted to the present term of office of the auditor-controller beginning January 7, 1963. The answer is clear; under the law, the alleged offense deals only with the present term of office to which Mr. Hale was elected by the people of Sacramento County; it cannot be justified by any wrongful or improper act or omission of which he may have been guilty prior to the commencement of his current term. In *People* v. *Thompson,* 55 Cal.App.2d 147, at pages 153-154 [130 P.2d 237], it is said: "One term of an office is separate and distinct from other terms of the same office. A proceeding for the removal of an officer cannot be maintained after the accused has ceased to hold his office, nor for a violation of his duty while serving in another office or in another term of the same office."

Reference is made in the opinion just quoted to the case of *Thurston* v. *Clark, supra,* 107 Cal. 285, 288, where it is said: "By parity of reasoning an officer cannot, under the same section, be removed from office for a violation of his duties while serving in another office, or in another term of the same office." (See also *Reid* v. *Superior Court,* 44 Cal. App. 349, 353-355 [186 P. 634].)

The Attorney General suggests that the rule in *Thurston* v. *Clark, supra,* is too narrow and that errors and omissions of a county officer in a preceding term may be weighed by a jury in determining whether he should be removed from office in the current term. But this argument is not sound. An accusation does not test whether a county officer has been a good man or a bad man as proved in a preceding term. It only determines whether, by reason of existing facts and circumstances, he should be removed from his present office.

The Supreme Court has held unmistakably that an accusation is not an indictment (*Fitts* v. *Superior Court of Los Angeles County,* 6 Cal.2d 230, 235 [57 P.2d 510]).

The act or omission for which an officer may be removed does not necessarily imply corruption or criminal intent or the commission of a crime (*People* v. *Harby,* 51 Cal.App.2d 759, 767 [125 P.2d 874]; *People* v. *Elliott,* 115 Cal.App.2d 410, 414 [252 P.2d 661]; *In re Burleigh, supra,*

145 Cal. 35, 37); the misconduct referred to simply requires a purpose or willingness to commit the proscribed act or to be guilty of the omission (*People* v. *Becker,* 112 Cal.App.2d 324, 326 [246 P.2d 103]); and as is said in *Coffey* v. *Superior Court of Sacramento County,* 147 Cal. 525, 529 [82 P. 75] : "The phrase 'misconduct in office' is broad enough to include any willful malfeasance, misfeasance, or nonfeasance in office." (See *People* v. *Mullin, supra,* 197 Cal. App.2d 479, 485-486.)

    In summary, if an official commits a crime in connection with the operation of his office, or wilfully or corruptly fails or refuses to carry out a duty prescribed by the law or by the charter, if any, under which he holds his position, or if his conduct as such officer is below the standard of decency rightfully expected of a public official such as drunkenness during work hours, or a gross and repeated failure to carry out his official routine in a timely and appropriate matter, he may be removed from his office as the result of an accusation. Such misconduct in office may be corrupt or merely wilful (2 Witkin, Cal. Crimes, Crimes Against Governmental Authority, § 874, pp. 820-821).

    The present law with respect to the removal of officials from office other than by impeachment is incorporated in sections 3060 to 3073 of the Government Code. Previously, this method of removal of officials was contained in sections 758 and 772 of the Penal Code. All code sections on this subject were enacted pursuant to section 18 of article IV of the Constitution of this state. They are not designed to convict an office-holder of crime, but merely to remove him from his office. Section 3060 of the Government Code provides that an accusation in writing against any officer of a county and certain specified other governmental units for wilful or corrupt misconduct in office may be presented by the grand jury of the official's county and that it must have the concurrence of at least 12 grand jurors.

    Section 3066 of the Government Code authorizes the filing of a written objection to the accusation: "If he [the official] objects to the legal sufficiency of the accusation, the objection shall be in writing. The objection need not be in any specific form. It is sufficient if it presents intelligibly the grounds of the objection."

The word "objection" is obviously wider in scope and meaning than the technical word "demurrer." The "objection" may be a "demurrer" in form or substance, or it may be based

on grounds other than those available in a demurrer itself such as the specifications here urged. A demurrer, through its use in the courts for centuries, has acquired a narrower, and strictly technical, meaning; a demurrer is a legal objection to the sufficiency of a pleading, attacking what appears on the face of the document. ▉ As is said in section 236 at page 220 of Witkin, California Criminal Procedure: ''A demurrer is a pleading (Pen. Code, § 1002) which raises an *issue of law* as to the sufficiency of the accusatory pleading. (Pen. Code, § 1004; cf. 2 [Witkin,] *Cal.Proc., Pleading,* § 482.) It lies only for defects appearing on the *face of the accusatory pleading.* (Pen. Code, § 1004; see *People* v. *McConnell* (1890) 82 C. 620 [23 P. 40]; 4 Wharton 727; cf. 2 [Witkin,] *Cal. Proc. Pleading,* § 483.) ''

▉ It will be seen at once that the objection which the court sustained was not a demurrer; a demurrer does not lie for insufficiency of the evidence to constitute an offense. (*People* v. *McAllister,* 99 Cal.App. 37, 40-44 [277 P. 1082].)

▉ The appellant argues that section 3066 of the Government Code does not authorize a motion to dismiss on the ground of the insufficiency of the evidence before the grand jury, but such a contention is directly opposed to the essential ground upon which *Greenberg* v. *Superior Court of the City & County of San Francisco,* 19 Cal.2d 319 [121 P.2d 713] was decided. In that case, a defendant attacked an indictment presented by the Grand Jury of the City and County of San Francisco which charged him with conspiracy to commit grand theft. The defendant had moved in the criminal case to quash the indictment on the ground that it was void and that the court was, therefore, without jurisdiction ''because there was no evidence before the grand jury tending to support the charges made against him.'' The motion was denied by the judge presiding in the criminal action; after the demurrer to the indictment was also overruled and the case was set for trial, the defendant prayed for a writ of prohibition to restrain the lower court from proceeding. In a landmark opinion written by the present Chief Justice of the Supreme Court, it was said, at pages 321-322:

''A grand jury's function is to return an indictment against a person only when the evidence presented to it indicates that he has committed a public offense. It is no Star Chamber tribunal empowered to return arbitrary indictments unsupported by any evidence. On the contrary the necessity of basing an indictment upon evidence is implicit in section

921 of the Penal Code which provides: 'The grand jury ought to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury.'

"A grand jury that indicts a person when no evidence has been presented to connect him with the commission of the crime charged, exceeds the authority conferred upon it by the Constitution and laws of the State of California, and encroaches upon the right of a person to be free from prosecution for crime unless there is some rational ground for assuming the possibility that he is guilty. (*People* v. *Restenblatt,* 1 Abb.Pr. (N.Y.) 268; *People* v. *Glen,* 173 N.Y. 395 [66 N.E. 112]; *People* v. *Buffalo Gravel Corp.,* 195 N.Y.Supp. 940; *People* v. *Brickner,* 8 N.Y.Crim.Rep. 217 [15 N.Y.Supp. 528]; *People* v. *Price,* 6 N.Y.Crim.Rep. 141 [2 N.Y.Supp. 414]; *Gore* v. *State,* 217 Ala. 68 [114 So. 794]; *Sparrenberger* v. *State,* 53 Ala. 481 [25 Am.Rep. 643]; *People* v. *Sexton,* 187 N.Y. 495 [80 N.E. 396, 116 Am.St.Rep. 621]; see *United States* v. *Silverthorne,* 265 F. 853; see 59 A.L.R. 567.) Such an indictment is void and confers no jurisdiction upon a court to try a person for the offense charged. (*Ibid.*) It has long been settled in most jurisdictions that an indictment is invalid if it is unsupported by any evidence before the grand jury. (See cases collected in 59 A.L.R. 567.) If there is some evidence to support the indictment, the courts will not inquire into its sufficiency (see cases collected in 59 A.L.R. 573), but the lack of any evidence conclusively establishes that the grand jury has exceeded its authority in returning an indictment."

The same enlightened viewpoint is applicable to an accusation. ▮▮▮ It would constitute a violation of basic right to hold that a trial judge could not sustain an objection to an accusation if there was no evidence whatsoever before the accusatory body which would justify the bringing of such a charge. To place a public officer under the necessity of defending an accusation in such circumstances would outrage the American sense of justice. Of course, a trial judge cannot substitute himself for the jury in such circumstances and pass upon conflicting testimony or weigh the effect of differing evidence; the trial jury must pass upon the factual matters involved, if there is an issue of fact unresolved. But if there is no evidence whatsoever in the record to justify the accusation, the trial judge, as the executor of our laws, should so rule. That is what the trial judge did here; he clearly indi-

cated his belief that there was no evidentiary showing before the grand jury to support the accusation; he stated, "It seems to me that the evidence of any wrong doing on the part of the defendant subsequent to January 7, 1963, is completely lacking; that there is no substantive evidence that he did anything wrong, or that he failed to do something which by law was an obligation imposed on him to do. I therefore feel that this proceeding should be dismissed."

As the record supports him in his belief that there was no evidence to justify a removal of an auditor-controller for anything that he did or omitted to do in his present term of office, the ruling was proper. Mr. Hale is not accused of the commission of any crime defined and denounced in the Penal Code. He is not charged with any personal defect, such as failure to give his attention to his duties or drunkenness in office. Whether or not he was derelict in the performance of specific duties or requests under the charter of the County of Sacramento (Stats. 1933, Res. ch. 72, p. 3088 et seq.; Deering's Gen. Laws, 1954, Act 6729; amended by Stats. 1937, Res. ch. 20, p. 2688 et seq.; Stats. First Extra Session 1940, Res. ch. 66, p. 285 et seq.; Stats. 1943, Res. ch. 14, pp. 3163-3165 and Res. ch. 15, pp. 3165-3167; Stats. 1945, Res. ch. 8, pp. 2888-2890; Stats. Extra Session 1949, Res. ch. 6, pp. 91-93; Stats. 1953, Res. ch. 13, pp. 3796-3800; Stats. 1955, Res. ch. 41, pp. 3884-3886; Stats. 1957, Res. ch. 9, pp. 4231-4234 and Res. ch. 10, pp. 4234-4238; Stats. 1959, Res. ch. 4, pp. 5324-5327; Stats. 1961, Res. ch. 16, pp. 4691-4694 and Res. ch. 29, pp. 4758-4762; Stats. 1963, Res. ch. 20, pp. 4676-4681) depends upon the evidence. It is provided in section 44 of article IX of the charter that the board of supervisors of the county has a right by ordinance to require the performance of additional duties by elected officers of the county. The proceedings before the grand jury show that a conference was held between Mr. Tarshes, the executive officer of the county, and Mr. Hastings, the defendant's predecessor as auditor-controller, in the year 1961, during which Mr. Hastings agreed to have his office carry on an audit of the books of NAWDSCO, and that, having assigned his deputy, Mr. Newman, to the work, that official prepared a major part of such an audit but did not reduce it to final form and never filed it as a formal report. Twenty days after Mr. Hale was appointed to succeed Mr. Hastings, he ordered Mr. Newman to stop the work; a considerable delay followed, but it appears from the evidence that before the end of 1961 and, consequently,

well before Mr. Hale's election to office, as a result of conferences between him and the executive officer of the county, the requirement of a continuation of the audit was in effect withdrawn, and that thereafter it was agreed by the executive officer and the board of supervisors, with the concurrence of Mr. Hale, that the rate investigation of the NAWDSCO franchise would be carried on by an outside firm, EBASCO. It cannot be said, therefore, that Mr. Hale failed to perform a duty required of him by the executive or the legislative body of the county.

The provisions of the Government Code prescribing the duties of an elected auditor are set forth between sections 26900 and 26945; it is not claimed by the People that Mr. Hale failed to carry out any such duties. Sections 26880 to 26886 of the Government Code deal with the office of controller which it is said "shall be held ex officio by the county auditor," to become operative only upon the adoption of a resolution to that effect by a unanimous vote of the board of supervisors at a regular meeting at which all members are present. The record in the present case does not explicitly show the adoption of such a resolution, but we can surmise that it was passed at some earlier time because of the use of the words "auditor-controller" in the title of the accusation as descriptive of the office held by Mr. Hale. However, section 26884 of the Government Code foresees the possible adoption by the board of supervisors of additional requirements for services by the county controller, in which event it shall be the duty of the board to provide by proper appropriations for additional personnel and equipment, supplies, and expenses. There is nothing in the record to show that the board of supervisors ever required Mr. Hale to perform any such services. The evidence indicates that the board of supervisors did not make such a request of him, but that, on the contrary, it adopted instead the services of EBASCO to make the rate review of the garbage franchises.

The deputy attorney general, when asked during the oral argument what facts in Mr. Hale's current term he relied upon to justify the accusation, replied that the record shows Mr. Hale wrote a letter to Mr. Tarshes, the county executive, dated January 18, 1963, in which he gave replies to certain questions previously asked him. In the letter Mr. Hale said that, in his opinion, an "audit" of NAWDSCO'S books by the grand jury would be helpful in determining a change of rate for garbage collection by that organization ". . . if it

produced certified statements of profit and loss and financial condition, *segregated as to franchised and non-franchised areas*," but that, in his opinion, the books of the organization did not make such a distinction and that it would be almost impossible for a licensed public accountant to give an honest viewpoint as to segregation that would be helpful; he further pointed out that in a rate review the person conducting it must use his judgment with respect to the bare bones of the audit and insure that the data used by him were pertinent and germane to the questions demanding an answer; his conclusion was that an audit of the books was not essential; but that it could be helpful under proper circumstances. While other persons, equally competent, might have differing opinions as to the helpfulness of an audit, it cannot be assumed that the answers in the letter were not honest or not worthy of consideration. Nowhere does it appear that Mr. Hale refused to answer questions asked at the grand jury hearing, or that he failed to give aid to Mr. Tarshes or to the board of supervisors to the extent of their requests for help. He did express himself as feeling that, as he had formerly acted as accountant for NAWDSCO, and its allied organizations, had had his former office in the room used by one of the partners of NAWDSCO, had been on the board of directors of an allied organization, had received pay for his services as auditor over a period of years amounting in total to almost $15,000, and had been the owner of stock in one subordinate corporation which was sold at a profit, he should not be a major participant in the preparation of a report which could be used to ascertain proper fees for garbage disposal. The county executive and the board of supervisors seemed to feel that this position on his part was justified. In any event, they did not prescribe any duty for him which was not fulfilled. There is, therefore, no proof whatsoever of a failure by Mr. Hale to perform any duty required of him during his present term of office.

Section 1238 of the Penal Code provides that an appeal may be taken by the People only (1) from an order setting aside an indictment, information, or complaint, and (2) from a judgment for the defendant on a demurrer to the indictment, accusation, or information. Obviously, subdivision 1 does not apply because the Legislature has not seen fit to give the People a right to appeal from an order setting aside an accusation; subdivision 2 is not in point, as the defendant did not file a demurrer; it is impossible to construe

the objection upon which the trial judge acted as a demurrer to the accusation. ▮▮▮ The right to appeal from an order or judgment in a criminal case is purely statutory; no appeal by the People is proper unless expressly permitted by the Penal Code. The order of the trial court dismissing the action was, therefore, not appealable. (*People v. Valenti,* 49 Cal.2d 199, 204-208 [316 P.2d 633]; *People v. Keener,* 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587]; *People v. Higgins,* 114 Cal. 63 [45 P. 1004]; *People v. Richter,* 113 Cal. 473 [45 P. 811]; *People v. More,* 71 Cal. 546 [12 P. 631]; *People v. Gershenhorn,* 225 Cal.App.2d 122, 125-126 [37 Cal.Rptr. 176]; *People v. Superior Court,* 217 Cal.App.2d 517, 520 [31 Cal.Rptr. 710]; *People v. Ehrhart,* 196 Cal.App. 2d 468, 470-471 [16 Cal.Rptr. 606]; *People v. Justice Court,* 185 Cal.App.2d 256, 259 [8 Cal.Rptr. 176]; *People v. Superior Court,* 137 Cal.App.2d 194, 196 [289 P.2d 813]; *People v. Baxter,* 119 Cal.App.2d 46, 49-50 [258 P.2d 1093]; *People v. Morris,* 115 Cal.App.2d 585, 588 [252 P.2d 681]; *People v. Knowles,* 27 Cal.App. 498 [155 P. 137]; 3 Cal.Jur.2d, Appeal and Error, § 97, pp. 549-550) and the motion to dismiss must be granted.

The appeal is dismissed.

Brown (R. M.), J., concurred.

STONE, J., Dissenting.—I dissent from only the part of the majority opinion holding that the order setting aside the accusation is a final order, yet nonappealable. The mere fact that an accusation is mentioned in the second paragraph of Penal Code section 1238 and not in the first paragraph thereof, does not, in my opinion, demonstrate a legislative intent that these provisions are exclusive and that Code of Civil Procedure section 963 is not applicable to this final judgment. Section 963 provides, in pertinent part: "An appeal may be taken from a superior court in the following cases:

"1. From a final judgment entered in an action, or special proceeding, commenced in a superior court, or brought into a superior court from another court; . . ."

Lack of a clear-cut statutory classification of an accusation as either a criminal or a civil action gives rise to my differences with the majority view. Although the statutes governing an accusation were removed from the Penal Code in 1943 and placed in Government Code sections 3060-3073, as the

majority opinion points out, the courts have held that for certain purposes an accusation is to be treated as a criminal proceeding. Yet, it has been held also that: "The procedure under section 758 [Pen. Code, now Gov. Code, § 3060] does not require the strict application of the rules which govern civil or criminal actions. It is not required that the misconduct charged against an official should necessarily constitute a crime. It is exempt from technical rules of procedure." (*People* v. *Harby,* 51 Cal.App.2d 759, 767 [125 P.2d 874].)

Since proceedings under the accusation statutes are neither strictly criminal nor strictly civil, I see no reason in law or logic to hold that the right to appeal from a final judgment of the superior court under Code of Civil Procedure section 963 does not apply to an accusation. On the other hand, it seems unreasonable to impute to the Legislature an intent to invest a trial court with plenary power to dismiss an action upon the pleadings and enter a final judgment immune from review. This would be to invest a superior court judge with authority transcending the Supreme Court of California. To me, such a result seems at odds with our theory of judicial process which jealously protects the right to appeal from a final judgment in the trial court, except in cases wherein a reversal on appeal would subject the defendant to double jeopardy. The issue of double jeopardy is not involved here.

Absent a clear mandate to the contrary, I would adhere to the fundamental judicial principle that recognizes the right to appeal from a final judgment.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1965. Mosk, J., did not participate therein. Traynor, C. J., and Tobriner, J., were of the opinion that the petition should be granted.